**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ROBERT SAMPSON, | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | : | |
| | : | |
| | : | |
| Defendant | : | |

## <u>COMPLAINT</u>

Plaintiff Robert Sampson ("Sampson") is a gifted student who has worked hard to overcome his reading and attentional disabilities.  The medical school that he attends---Stony Brook University—provides Sampson with double time on medical school examinations.  Stony Brook University made this determination based on neuropsychological evaluations of Sampson, and has urged the National Board of Medical Examiners ("NBME") to similarly provide Sampson with double time so that his testing scores reflect the extent of his knowledge of medicine rather than the extent of his disability.  NBME, however, has repeatedly refused to provide Sampson with testing accommodations, leaving Sampson unable to progress.  Such accommodations, which are neither expensive nor difficult to provide, allow individuals with learning disabilities and other cognitive impairments, like Sampson, to demonstrate their aptitude and skill level.  Sampson accordingly brings this lawsuit seeking preliminary and permanent injunctive relief requiring NBME to provide him with the testing accommodations to ensure that the NBME examinations measure Sampson's knowledge of medicine rather than the extent of his disabilities.  Sampson also seeks declaratory relief, compensatory damages, and reasonable attorneys' fees and costs.

**Jurisdiction, Parties and Venue**

1.      Sampson is a citizen of the state of New York and is a joint-degree student in medicine and business administration at Stony Brook University.

2.      The NBME is a District of Columbia not-for-profit organization headquartered at 3750 Market Street, Philadelphia, Pennsylvania. NBME administers the United States Medical Licensing Examination ("USMLE"), a three-step examination, the successful completion of which is required for medical licensure in the United States. NBME is a private entity that offers examinations related to the application and credentialing for professional purposes and as such is subject to the non-discrimination and appropriate accommodations requirements of the Americans with Disabilities Act ("ADA").

3.      The NBME administers the USMLE throughout the country, including in the Eastern District of New York.

4.      NBME engages in business in New York and this judicial district and this action arises from those business activities.

5.      Upon information and belief, NBME is a recipient of Federal financial assistance, including but not limited to funds from the United States Department of Defense, the United States Veterans Administration, and the Uniformed Services University of Health Sciences, as well as federal funds that pass through the Federation of State Medical Boards. The NBME also benefits from the service of federal officials who serve on its committees and otherwise further its mission on the federal fisc. The NBME is therefore subject to section 504 of the Rehabilitation Act.

2

6.     This action arises under the laws of the United States, specifically the ADA, 42 U.S.C. § 12101 *et. seq.* and section 504, 29 U.S.C. § 794.  Therefore, this Court has subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. §1331 and 1343.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the NBME is doing business in this judicial district by virtue of administering the USMLE Step 1 in this district and has sufficient contacts for personal jurisdiction.  Alternatively, and cumulatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that acts of discrimination have taken place in this District and Sampson resides in this District.

8.     This action is related to another action pending in this District, specifically, *Sampson v. Stony Brook University*, 2:22-cv-04490 (JMA)(AYS).


**FACTUAL ALLEGATIONS**

9.     Robert Sampson has successfully completed three out of four years of medical education.

10.     Although his education was interrupted as the result of his disability and need for accommodations, he is approximately 42 weeks away from completing his medical education.

11.     Sampson is a student in good standing.

12.     Sampson is a joint degree student who is currently enrolled at both Stony Brook's Renaissance School of Medicine ("Stony Brook") and its College of Business.

13.     Sampson is a gifted student. His grade point average in his business school classes to date is a straight 4.0.

14.     Sampson is likewise a gifted medical student who shows promise of being a well-prepared and compassionate doctor. In his third-year clinical rotations, just recently completed in 2021, Stony Brook's medical faculty and preceptors penned glowing evaluations of Sampson,

saying Sampson was an "excellent student" who is "highly compassionate", "looked for ways to help", showed "great enthusiasm", and was "an asset to our team". They further described Sampson as "extremely dedicated to his patients", "thoughtful," and a "pleasure to work with".

15.    In his recent surgical rotation, preceptors wrote that even when cases ran late and Sampson could have left, he "insisted on staying and finishing with the team." They reported that Sampson "exhibits an advanced understanding of surgery for his level and consistently portrays a natural sense of curiosity, which is apparent in his thoughtful questions."

16.    Of his readiness to move into his 4th and final year of medical school, Stony Brook faculty and preceptors said that Sampson's performed "above expected for the level of training".

17.    In addition to and separate from his dedication to his studies, Sampson on his own invented not one but two medical systems for which he received two patents from the United States Patent and Trademark Office.

18.    All of Sampson's accomplishments were achieved as an individual with a disability.

19.    Sampson is substantially impaired by a Specific Learning Disorder with impairments in reading and attention deficit hyperactivity disorder (ADHD). These conditions individually and collectively substantially limit the major life activities of reading, thinking, learning, cognitive processing and taking timed examinations.

20.    Sampson has spent a lifetime requiring accommodation and/or mitigating measures to overcome these challenges.

21.     Despite repeated requests, NBME has denied and continues to deny Sampson, appropriate accommodations including 100% extended time over two days and additional breaks for the USMLE Step 1.

22.     If Sampson does not receive necessary accommodations on the USMLE Step 1, his examination results will not reflect his aptitude and achievement level as required by law. Moreover, without the necessary accommodations, Sampson is at imminent risk of failing the examination due to the inability to complete the examination if given insufficient time to access and answer the questions.

23.     Sampson's situation is further exacerbated by the fact Stony Brook's Renaissance School of Medicine will expel Sampson if he does not take and pass the USMLE Step 1. Absent accommodation for his disabilities, Sampson's medical career will end despite all the promise his educators have seen in him.

**Sampson's Disabilities**

24.     Throughout his education, Sampson has struggled with reading, concentrating and processing information.

25.     He began years of speech and language therapy at the age of four. In grammar school, though bright, his mother read assignments to him because he struggled with reading comprehension and likewise struggled to focus and read for meaning.

26.     His educational record is notable each year as far back as kindergarten for difficulties in focus, attention, comprehension, and timely completion of tasks. For example, his second-grade teacher noted that Sampson's difficulty focusing caused him to struggle with comprehension. Likewise, his fifth-grade teacher noted that his grades were impacted by his

inability to complete assignments. Sixth grade teachers also noted that his distraction interfered with assignment completion.

27.     During elementary school he required both tutors and a reading specialist. In fact, Sampson relied heavily on tutors throughout his education and worked hard – harder than his peers – to learn and demonstrate that knowledge.

28.     In college, Sampson avoided classes with heavy reading and his grades varied widely because of the impact of his disabilities.

29.     Educational testing confirms the reports of Sampson's teachers all the way back to elementary school and his own experiences.

30.     For example, neurocognitive testing in 2013 documented that when faced with a complex reading task, Sampson was only able to complete half of the test in the allotted time as compared to the general population.

31.     Contrary to popular, cultural misperceptions, students with ADHD can be significantly impaired, facing real, disability-based barriers to demonstrating their knowledge. This is true for gifted students who are twice exceptional insofar as they are both gifted and a student with a disability.

32.     Likewise, students with learning disability face significant and real disability-based barriers that can require accommodation.

33.     Students with both ADHD and learning disabilities often find the interplay of these two disabilities to be devastating – reading is more difficult and labored requiring focus that the student does not have because of ADHD.

34.     As the result of supportive parents, a host of tutors, dedication, work ethic, mitigating measures, and a bright mind, Sampson earned admission to and matriculated at Stony Brook's Renaissance School of Medicine.

35.     When Sampson entered medical school on August 12, 2015, he hoped that the mitigating measures he had relied on for a lifetime would be sufficient to overcome the challenges imposed by his ADHD and learning disabilities, but this was not the case.

36.     Although Sampson passed all of his medical school classes, he did not have time to finish reading all of the questions on the examinations and therefore was not able to demonstrate the fullest extent of his knowledge of medicine.

37.     Due to the difficulty that Sampson experienced completing his exams due to his disabilities, during Sampson's second year of medical school, he submitted a request for accommodations with Stony Brook's Disability Support Services and furnished the requisite documentation.

38.     Stony Brook Disability Support Services initially concluded based upon review of Sampson's neurocognitive evaluations that Sampson did have disabilities that required accommodations and approved him to begin receiving time and half (50% additional time) on all testing.

39.     However, subsequent expert evaluation concluded that 50% additional time was not sufficient and on the basis of new documentation, Stony Brook approved Sampson for 100% additional time.

**The USMLE Step 1**

40.     The United States Medical Licensing Examination ("USMLE") is a three-step test administered by the NBME. A physician must pass each of the three steps, named Step 1, Step 2 Clinical Knowledge (CK) and Step 3.

41.     The USMLE Step 1 examination purports that it "assesses the examinee's understanding of and ability to apply important concepts of the basic sciences to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy."

42.     Under standard conditions, the Step 1 examination is a computer-based examination, which consists of questions presented in standard multiple-choice formats.  Step 1 has approximately 280 multiple choice test items, divided into seven 60-minute blocks, administered in one eight-hour testing session.

43.     The NBME develops and administers the USMLE Step 1 at various Prometric test centers and on various dates throughout the United States. The results of each student's scores are reported to that student's medical school.

44.     Sampson must pass the USMLE Step 1 in order to maintain his eligibility to remain in medical school.  Furthermore, passing the USMLE Step 1 is required to graduate medical school, to enter into a residency program, to be eligible to take the USMLE Step 2 and 3 examinations and to ultimately obtain medical licensure.

45.     At Sampson's medical school, 98% of medical students pass the USMLE which is higher than the 97% national pass rate.

## The NBME's Request for Accommodation Process

46.     Unlike medical students without disabilities who are able to register for and almost immediately take the USMLE, students with disabilities must prepare and submit voluminous and time-consuming applications for accommodations.

47.     These applications for accommodations take months to prepare and for the NBME to process.

48.     Each application for accommodation to the NBME can also require significant financial resources to complete because each time a student requests accommodations, they must register for the USMLE and pay significant fees to the NBME.

49.     The NBME has a long history of denying medical students' well-documented requests for accommodation. For example, in *Ramsay v. NBME*, a court entered a preliminary injunction requiring the NBME to provide the medical student with her needed accommodations. *Ramsay v. Nat'l Bd. of Med. Exam'rs,* 968 F.3d 251 (3d Cir. 2020).  Likewise in *Berger v. Nat'l Bd. of Med. Exam'rs*, the Court entered a preliminary injunction requiring the NBME to provide accommodations to a student with ADHD and learning disabilities. Case No. 1:19-cv-99, 2019 U.S. Dist. LEXIS 145666 (S.D. Ohio August 27, 2019).

50.     The NBME denies more than half of the requests for accommodation filed by medical students with disabilities.

51.     The NBME profits financially from denying disability accommodations requests for a few reasons.

52.     First, students must register each time they apply for accommodations and for each registration for the USMLE Step 1 or Step 2, medical students must pay the NBME $640.

53.     Second, students with disabilities who are denied accommodations fail the USMLE at a much higher rate than students without disabilities. Therefore, those students must re-register paying an additional fee to the NBME of another $640 with each registration.

54.     While the NBME profits from denying requests for accommodations, medical students with disabilities face enormous costs and consequences as the result of denials of accommodations requests.

55.     For example, students with disabilities fail the USMLE at far higher rates than students without disabilities.

56.     Students who fail any part of the USMLE often face delays in their medical education, reduced opportunities in the residency match process, financial consequences related to the need to repeatedly pay hefty registration fees to the NBME, costs related to additional and unnecessary educational testing the NBME requires students to submit, as well as delayed earnings and diminished lifetime earning potential.

57.     Unfortunately, in some cases, students with disabilities face total loss of career as the result of the NBME's denial of their requests for accommodation.

58.     Upon information and belief, students who request additional time as the result of ADHD and/learning disabilities are denied accommodations at a rate higher than students seeking accommodations as the result of other disabilities.

59.     The NBME requires that students, even students with disabilities that are fixed and unchanging, submit results of testing administered within the prior three years documenting their disability. Such testing can cost a medical student many thousands of dollars.

60.     Comprehensive psychoeducational testing of the kind required by the NBME is expensive and typically is not covered by health insurance. Additionally, obtaining such testing

can be time consuming, and has been particularly difficult and time consuming to obtain as the result of COVID-19.

61.     In addition to recent testing (defined by the NBME as testing every three years) proving disability and need for accommodations, the NBME requires medical students with disabilities to submit personal statements, proof of past testing accommodations, educational records sometimes spanning many years and institutions, and certification from the student's medical school that they receive the accommodations being requested.

62.     A recent survey of United States medical schools documented that some medical schools devote as many as 40 hours and $10,000 per student requesting accommodation while other medical schools do not devote resources to assisting students in seeking accommodations from the NBME.

**Denials of Sampson's Request for accommodations**

63.     On or about April 1, 2017, Sampson filed his first request for accommodation to the NBME seeking extended time and extra breaks.

64.     Sampson submitted all of the elements required by the NBME with his application for accommodation including comprehensive psychoeducational evaluation and certification from his medical school that he needed and was receiving the accommodations requested.

65.     The documentation provided to the NBME complied with the documentation required by the NBME for requesting accommodations for the USMLE Step 1.

66.     By letter dated June 13, 2017, NBME informed Sampson that his request for accommodations for the USMLE Step 1 was denied and that no accommodations were approved.

67.     On or about June 23, 2017, Sampson re-applied for accommodations submitting additional documentation to support his request.

68.     By letter dated August 1, 2017, NBME informed Sampson that his request for accommodations for the USMLE Step 1 was denied for the second time.

69.     On or about November 20, 2017, Sampson again applied for accommodations for the USMLE Step 1 and furnished NBME with additional documentation to support his request for accommodations.

70.     By letter dated January 12, 2018, NBME informed Sampson that his request for accommodations for the USMLE Step 1 was denied for the third time.

71.     On February 22, 2018, Sampson again applied for accommodations for the USMLE Step 1.

72.     By letter dated March 6, 2018, NBME informed Sampson that his request for accommodations for the USMLE Step 1 was denied for the fourth time.

73.     On or about June 29, 2018, Sampson applied for accommodations and furnished additional documentation supporting his request for accommodations.

74.     By letter dated September 7, 2018, NBME informed Sampson that his request for accommodations for the USMLE Step 1 was denied for the fifth time.

75.     On or about November 14, 2018, Sampson applied for accommodations for the sixth time.

76.     NBME communicated a sixth denial in a letter dated January 4, 2019.

77.     In an effort to comply with his medical school's mandate that he take and pass Step 1 before continuing with his education, Sampson took Step 1 of the USMLE in January of 2020, without the accommodations he needed.

78.     Without the extended time he needed because of disability, Sampson was unable to substantively complete significant portions of the exam and resorted to guessing vastly as the clock ran out. He failed the USMLE Step 1 exam.

79.     In order to again request accommodation and because of the NBME's requirement that testing be recent even if a disability is life-long and unchanging, Sampson needed new, comprehensive and costly educational testing.

80.     Sampson submitted himself for comprehensive testing by Dr. Jeannette Wasserstein, a clinical neuropsychiatrist and assistant clinical professor of psychiatry at Mt. Sinai Medical School.

81.     As had prior evaluations, this new evaluation underscored Sampson's very real and significant need for extended testing time. Dr. Wasserstein administered a battery of tests and concluded that Sampson had both very significant ADHD and learning disabilities. The results were consistent with prior testing. She described Sampson has having "significant handicaps on tasks that rely on perceptual reasoning and working memory, such as reading comprehension."  Tests showed both his reading rate and reading fluency as being significantly deficient. His reading rate on difficult material was at the 1st percentile. When answering questions within the normal time limit on one inventory, for example, he was able to answer only 12 of 38 questions in the time allotted with the result that he scored. With double time he answered 37 of 38 questions correctly.

82.     Dr. Wasserstein found severely impaired sustained visual attention, which would be expected to impact performance on lengthy standardized exams. She also found significant difficulty with tasks that rely on visual processing and would be even more pronounced under timed testing conditions.

83.     Dr. Wasserstein diagnosed significant reading comprehension issues resulting from the combination of diagnoses including complex reading disorder with dysgraphia with impaired visual processing and other memory and learning deficits. She found clear deficits in sustained attention, executive function, memory and learning ability and visual-motor integration. These deficits were not just between Sampson's Superior/Very Superior intellect and test performance but were also absolute deficits as compared to the general population.

84.     Dr. Wasserstein strongly advised that double time was needed as an accommodation in testing as well as extended breaks between test segments.

85.     Stony Brook Disability Support Services reviewed the test results and granted Sampson double time on testing following Sampson's submission of Wasserstein's report.

86.     Sampson submitted yet another application for accommodation with the results of this new testing and in June 2022, the NBME denied Sampson's request for accommodations for the seventh time.

87.     Over the course of Sampson's multiple requests for accommodations, he submitted extensive documentation to the NBME, which included reports of evaluations by neuropsychologists, letters from physicians and advocates, documentation of the accommodations he received in medical school from officials at Stony Brook, and historical documents reporting a lifetime of tutoring and reports dating back to his early childhood. In addition to multiple applications for accommodations submitted between 2017 and 2022, personal statements, and communication from counsel, Sampson submitted the following to the NBME:

        a.  Report of Suzanne Michels, Ph.D.;
        b.  Report of Thomas Aronson, M.D.;
        c.  Letter from Andrew Lam, M.D.;
        d.  Letter from Stony Brook Learning Specialist;

    e.  Letter from Christopher Heedles, LMSW, Supportive Education Counselor at Stony Brook Disability Student Services;
    f.   Certificate of Prior Test Accommodations dated March 27, 2017 and signed by Stony Brook;
    g.  Report of NBME Shelf Exam scores from Stony Brook University;
    h.  MCAT score report of January 1, 2015;
    i.  ACT Score Report from June 2008;
    j.  PSAT score report from 2007;
    k.  SAT Score Reports from 2005 and 2008;
    l.  Report of Administration of the Otis-Lennon School Ability Test (OLSAT) dated May 28, 1999
    m. Letter from Jan Serrantino, Ed.D, dated June 2017.;
    n.  Letter from Shelley and Steven Sampson;
    o.  Letter from Jan Serrantino, Ed.D. dated October 9, 2017;
    p.  Letter from Thomas Aronson, M.D. dated September 6, 2017;
    q.  Letter from Allison Anderson dated August 10, 2017;
    r.  Letter from Stony Brook Learning Specialist, Linda De Motta, dated February 2018
    s.  Letter from Thomas Aronson, M.D. dated June 12, 2018; and
    t.  Report of Jeanette Wasserstein, Ph.D., MBPP.

88.    The documentation furnished to NBME provided current and historical evaluations, which established that Sampson has a well-documented history of a learning disability and ADHD that impact his reading, learning, thinking and concentration as compared to most people.

89.    In spite of never having met Sampson, never having tested him or never having evaluated him, NBME ignored highly qualified professionals who observed and evaluated Sampson and also ignored his history of receiving accommodations in at his school and on similar exams.

90.    The NBME profited financially off of its denials of Sampson's requests for accommodation as with each new application for accommodations, the NBME required Sampson to again pay its registration fee.

91.     Sampson has an indisputable disability that substantially limits the major life activities of thinking, learning, reading, concentrating, studying, processing of information and taking standardized examinations in the same condition and manner as most people.

92.     The requested accommodations are necessary to appropriately accommodate the condition and manner of Sampson's limitations. Without these accommodations, Sampson will be unable to demonstrate his actual knowledge, skill and abilities on the USMLE Step 1.

93.     As a direct and proximate result of NBME's violations of the ADA and section 504, Sampson will be unable to complete his medical school education if he does not successfully complete the USMLE Step 1. He is at risk of imminent dismissal from medical school despite being a student in good standing because he must take and pass Step 1 before completing his education.

94.     Moreover, he will and has been placed at a distinct disadvantage of competing for quality residency positions if he must take the examination without appropriate accommodations for his disability.

95.     He will be and has been irreparably harmed because he has a clear risk of failing the USMLE Step 1 and his medical school and the NBME both limit the number of attempts he is permitted to pass Step 1. Moreover, he will be prevented from competing on a level playing field with other students in medical school.

96.     Because Sampson has been unable to obtain the requested accommodations and has failed the USMLE Step 1 without accommodations, Stony Brook has indicated that he will be terminated from medical school.

97.     Sampson has paid significant additional costs as a proximate result of NBME's discriminatory conduct.

98.     Sampson has paid significant funds to the NBME as well as having been forced to obtain educational testing which the NBME then disregarded.

99.     Sampson requires the requested accommodations on the USMLE Step 1 not to gain an advantage, but to attempt to level the playing field because his functional limitations impact his ability to take the examination in a way that non-disabled test takers do not experience.

100.    Sampson through counsel has notified NBME of its violations of the ADA and section 504 and requested that it remedy this matter by providing the requested accommodations. NBME failed to correct its violations and failed to provide appropriate accommodations.


### COUNT I – VIOLATION OF THE ADA

101.    Sampson incorporates by reference the foregoing paragraphs as if set forth fully herein.

102.    Sampson is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12101 *et. seq*. Accordingly, Sampson is a qualified individual within the meaning of the ADA in that she meets all the eligibility criteria for taking the USMLE Step 1.

103.    Sampson requires appropriate accommodations to participate in a fair, full, and equal basis on the USMLE Step 1. The modifications that Sampson needs, namely extended time, extra breaks, and testing over two days, would not impose a fundamental alteration, but would attempt to level the field and allow his aptitude and abilities to be fairly and accurately measured.

104.    Title III of the ADA, which is enforced by the U.S. Department of Justice, states in pertinent part, "It is discriminatory to fail to make reasonable modifications to policies,

practices, and procedures when necessary to provide goods and services to a person with a disability." 42 U.S.C. § 12182(b)(2)(A)(ii).

105.    NBME administers the USMLE examinations, which are examinations related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

106.    The ADA requires NBME to offer these examinations in a manner accessible to persons with disabilities.

107.    The Department of Justice regulations mandate that a private entity offering such examinations ensure that that the examination is administered so as to "best ensure" that "the examination results accurately reflect the individual's aptitude or achievement level or whatever other fact the examination purports to measure," rather than measuring the extent of the individual's disability.  28 C.F.R. § 36.309(b).

108.    The Department of Justice (DOJ) regulations require that when considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, as well as such modifications, accommodations, or related aids and services provided in response to a plan describing services. 28 C.F.R. §36.309(b)(1)(v).

109.    The DOJ's ADA guidance further provides, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796.

110.    NBME has discriminated and continues to discriminate against Sampson on the basis of his disability by denying him an equal opportunity to demonstrate his aptitude and achievement level on the USMLE examinations in violation of the ADA, including 42 U.S.C. §§ 12182, 12189 and 28 C.F.R. § 36.309.

111.    NBME's discriminatory policies and practices violate Sampson 's rights under the ADA and the regulations promulgated thereunder. NBME's discriminatory policies and practices include but are not limited to:

a.      Failure to grant accommodations when Sampson submitted the requisite documentation and provided documentation of a history of comparable accommodations on standardized examinations and other academic examinations.

b.      Failure to give considerable weight to Sampson's evaluators.

c.      Failure to offer examination in a place and manner that is accessible to individuals with disabilities and best ensures that the examination accurately reflects Sampson's aptitude, achievement level, or whatever other factor the examination purports to measure.

d.      Failure to engage in good faith in the interactive process to consider and implement effective accommodations to Sampson's disability.

e.      Failure to give considerable weight to Sampson's prior approval and use of accommodations in school and on standardized examinations.

f.      Failure to consider Sampson's request for accommodations without regard to the ameliorative effects of mitigating measures.

g.      Failure to conduct a proper review and apply appropriate legal standards to Sampson's request for appropriate accommodations.

h.      Placing an extreme burden of proof, beyond what is required by the ADA, to establish Sampson's disability or need for accommodations.

i.      Failing to respond in a timely manner to Sampson's requests for testing accommodations.

j.      Forcing Sampson to pay registration costs far in excess of the costs paid by non-disabled students.

112.    Sampson will be irreparably harmed if the NBME continues its unlawful refusal to provide him the appropriate test accommodations as requested and unless this Court grants injunctive relief prohibiting the continued violation of Sampson's ADA rights and compelling the NBME to provide the requested accommodation, in that:

  a.  Sampson's medical school career will be terminated since a passing score on the USMLE is a prerequisite to continuing his medical school education.

  b.  Extended time is necessary to ensure that the USMLE measures Sampson's knowledge of medicine rather than the extent of his disability.

  c.  Sampson's opportunity to engage in his career of choice is effectively on extinguished unless the NBME is compelled to comply with the ADA.

  d.  Requiring Sampson to take the USMLE Step 1 without the extended time accommodation puts him at a distinct disadvantage given his disability.

  e.  Reduced performance on the USMLE Step 1 as a result of not receiving his requested accommodation significantly reduces Sampson's future residency and professional career options.

  f.  Sampson faces expulsion proceedings under his school's policy if he takes and fails to pass the USMLE Step 1.

113.    As a result of the NBME's violation of the ADA, Sampson has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

114.    NBME's conduct constitutes an ongoing and continuous violation of the ADA. Unless enjoined from doing so, NBME will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries for which Sampson has no adequate remedy at law. Consequently, Sampson is entitled to injunctive relief under the ADA, 42 U.S.C. § 12188.

## COUNT II – VIOLATION OF THE REHABILITATION ACT

115.     Sampson incorporates by reference the foregoing paragraphs as if set forth fully herein.

116.     Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

117.     NBME receives federal grants, contracts, and other financial assistance, thereby subjecting itself to the requirements of Section 504.

118.     Sampson is a qualified individual with a disability under section 504.

119.     NBME has, solely by reason of Sampson's disability, excluded Sampson from participation in, denied him the benefits of, and otherwise discriminated against him in its services, programs, or activities.

120.     NBME's actions, set forth more fully above, and incorporated herein, constitute intentional discrimination on the basis of disability in violation of Section 504.

121.     The actions by NBME were done intentionally or with deliberate indifference to the protected rights of Sampson.

122.     As a proximate cause of NBME's discrimination, Sampson suffers and continues to suffer harm including but not limited to economic and non-economic harms, actual monetary loss, future monetary losses, and other injuries and monetary losses including denial of equal treatment and access.

### RELIEF REQUESTED

1.     An order compelling the NBME, or those acting as agents for or in concert with it, to immediately cease and desist from its refusal to accommodate Sampson's request for

necessary accommodations on the USMLE examinations and ordering that the NBME immediately comply with the ADA and section 504 by providing Sampson the requested appropriate accommodation on the USMLE, which shall include 100% extended time over two days, extra breaks and reporting the results of said examination. Said accommodation shall also be made applicable to all Steps of the USMLE examinations.

2.      Make the above order permanent and that such order be made applicable to all future examinations administered by NBME and taken by Sampson.

3.      An order granting such other injunctive relief as may be appropriate including but not limited to testing accommodations and expungement of Sampson's Step 1 score obtained under discriminatory conditions.

4.      An order granting declaratory relief.

5.      An order awarding compensatory and/or nominal monetary damages and any other available damages.

6.      An award for attorney fees, costs, and expenses of suit incurred herein.

7.      Award for such other and further relief as the Court may deem just and proper.

Respectfully submitted,


s/Charles Weiner
Charles Weiner
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel. (267) 685-6311
Fax (215) 604-1507
charles@charlesweinerlaw.com

Mary C. Vargas
Michael Steven Stein
mary.vargas@steinvargas.com
michael.stein@steinvargas.com
STEIN & VARGAS LLP
10 G Street NE, Suite 600
Washington, DC  20002
Tel. (240) 793-3185
Fax (888) 778-4620

*Attorneys for Plaintiff*

**Demand for Jury Trial**

Plaintiff demands a trial by jury with respect to all issues triable of right by jury.


/s/   Mary C. Vargas
Mary C. Vargas

Attorney for Plaintiff