# EXHIBIT 8



March 29, 2017

To Whom It May Concern,

I am the Learning Specialist at Stony Brook Medical School. I hold a NYS license in both regular and special education, and I have more than 30 years of teaching experience in both fields. My Master's degree and all subsequent teacher and training experiences have focused on learning disabilities, cognition and the teaching-learning relationship. For the past 10 years, I have been working with medical students at Stony Brook Medical School and Hofstra Northwell Medical School as well as private clients from hospitals and medical schools from around the United States and the Caribbean who have struggled to pass their specialty board exams.

I now write in support of Robert Sampson's request for accommodations for the USMLE Step 1 exam. Robert has been working with me on his study skills for the past year and half. He has a learning disability, specifically dyslexia, as well as Attention Deficit Disorder, that substantially limits his academic learning skills. For example, Robert has a slow reading rate and poor visuospatial processing such that he will avoid reading because the reading process is both exhausting and painful. His dyslexia intrudes upon his ability to complete his exams on time, and this time management problem extends to other academic tasks, such as writing papers or completing dissections in the anatomy lab.  Robert struggled to learn from his textbooks, so we worked on finding other resources--videos, hands-on interactions, discussions, drawings—that were most appropriate and least restrictive for Robert's needs as a student with a learning disability.

To his credit, Robert worked hard to overcome his disability by developing his new learning skills, and for a while, his efforts seemed to be fruitful in that he felt he was learning the material on his terms, even though he was taking significantly longer than his classmates to complete his work. His exam results, however, demonstrated that he had not overcome his disability enough to accurately reflect all he had learned. Once he began failing, despite redoubling his efforts, he became increasingly embarrassed and started to shut down a bit. I have seen this happen so many times in my long career, so I knew Robert needed some space to come to terms with his next step—requesting the accommodations he needed. I encouraged him to apply for accommodations through our Disability Support Services office (DSS). Once he secured the appropriate time accommodations, coupled with the learning skills we had been developing and practicing, Robert was able to demonstrate his knowledge on his exams. His NBME shelf exam scores jumped from a failing average of 66% on unaccommodated exams to a passing average of 83% on accommodated exams.

In my field of teaching, we always refer to accommodations as leveling the playing field. It is an apt turn of phrase because, once a student is no longer being tested on his disability and can compete without a handicapping interference, then we can witness the real nature of his abilities.



Accommodations, as originally mandated in 1975 by P.L. 94-42 and reiterated in our current ADA, are available to provide students with disabilities *access* to education. Once they gain that access on a level playing field, they are responsible for achieving success. Accommodations for dyslexia are necessary to provide Robert the access he needs to demonstrate his abilities without being unfairly tested on his disability. Robert's dyslexia substantially impairs his reading skills, test taking skills, time management skills, and memory. He has done quite a bit in a short time to improve his absorption of knowledge under circumstances of time, task and location over which he has control. But he cannot control the circumstances of time, task and location during an exam. As noted, Robert emerged from a failing status to a passing student in good standing because the accommodations authorized by DSS achieved the intended goal. With accommodations, Robert had the time he needed to decode the text of the questions, to process and organize his thoughts, to analyze any accompanying imaging or sound files and to do so at a pace at which his learning disability poses minimal intrusion. He needs accommodations—1.5 time on his exams, a quiet location for his exams free from distractions, perhaps even an auditory version of his exams—to give him the control he needs to free him from his disability during exams.

Should you have any questions about my work with Robert, please email me at linda.demotta@stonybrook.edu or call me at 516-662-1612.

Sincerely,

Linda De Motta
Learning Specialist
Stony Brook University School of Medicine