IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SAMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:22-CV-05120-JMA-AYS |
| | ) |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF DAWN P. FLANAGAN, PH.D.

I, Dawn P. Flanagan, declare as follows:

1. Unless otherwise stated, this declaration is based on my personal knowledge and my review of records that I have been provided regarding Robert Sampson.

2. I am a Professor of Psychology at St. John's University since 1992, where I teach graduate courses in cognitive assessment; psychoeducational assessment for intervention; assessment, diagnosis, and remediation of learning disabilities; and professional issues in School Psychology, as well as undergraduate courses in tests and measurement. Since 2005, I have also been a clinical affiliate to the Yale Child Study Center at the Yale University School of Medicine, where my responsibilities include lecturing on topics related to cognitive assessment and evaluation and treatment of specific learning disabilities, as well as consultation with faculty and staff on issues related to tests and measurement. My areas of expertise include the diagnosis of specific learning disorders, and I have authored or co-authored numerous books, book chapters, and peer-reviewed articles relating to that subject. A true and correct copy of my curriculum vitae is attached at Exhibit A.

3. I was asked to review documentation relating to Mr. Sampson's request for testing accommodations on the USMLE Step 1 exam and to provide my opinion on whether the documentation demonstrates that Mr. Sampson has a disability that warrants accommodations. It is my understanding that he is requesting double the standard amount of testing time and extra breaks, and that he bases his request on the following diagnoses: Specific Learning Disorders in reading and writing, Unspecified Neurodevelopmental Disorder affecting visual processing, and Attention Deficit Hyperactivity Disorder, with a combined presentation.

4. The documentation that I reviewed included an undated Declaration of Robert Sampson with attachments; a Declaration of Jeanette Wasserstein dated September 19, 2022, with an attached evaluation report from 2020; evaluation reports from a Drs. Michels and Anderson, letters from a Dr. Aronson; various standardized testing score reports for Mr. Sampson; accommodation request forms that Mr. Sampson submitted to NBME; and various other records.

5. Based on the documents provided and my review to date, it is my firm belief that Mr. Sampson is not entitled to his requested testing accommodations because he is clearly not substantially limited in any major life activities relevant to taking the Step 1 examination, when his abilities are compared to those of most people in the general population.

6. Indeed, this is not a close case. The data do not show a convergence of data sources that support a need for accommodations on the USMLE Step 1. My primary reasons for this conclusion are as follow:

- Dr. Wasserstein concluded that ADHD "substantially impairs his learning, reading, thinking, cognitive processing, and test taking as compared to the general population." There is little to no evidence to support this statement and considerable evidence that

negates it, including consistently Average to Superior performance on standardized tests under timed conditions (*e.g.*, PSAT, SAT, ACT, MCAT).

- There is ample evidence of conflicting information from self-report and evidence of current functioning. Only three of many examples follow:
    - Mr. Sampson endorsed the neuropsychological symptom of "Difficulty figuring out how to do new things." However, there is no evidence of this in his course evaluations in medical school. It was reported that Mr. Sampson "has generated good differential diagnosis" and often "thinks outside of the box". He is described by medical school faculty as "inquisitive" and is reported to have done a good job "analyzing all the data to come up with a very good diagnosis and plan for care".
    - Mr. Sampson also endorsed the neuropsychological symptom of "Difficulty planning ahead." However, medical school faculty and staff reported that he is "very proactive in his learning" and "demonstrated great preparation and breadth of reading." Also, Dr. Wasserstein stated in her report, "recognizing his need for additional preparation he began preparing for his standardized exams years in advance."
    - Based on Inattentive Symptoms (CAADID – structured interview), Mr. Simpson indicated "careless mistakes, doesn't follow instructions or follow through, difficulty organizing, blurts out answers, difficulty awaiting turn, interrupts or is intrusive." There is little if any current evidence to show that these symptoms are present or that they interfere with activities of daily living.

- Dr. Wasserstein provided many interpretations of Mr. Sampson's performance on a variety of psychological tests that were not substantiated. In fact, there was often an overwhelming amount of data that contradicted her interpretations. Only three of many examples follow:
    - Dr. Wasserstein indicated that "his impaired neuropsychological function greatly impacts his ability to perform under rapid processing demands, particularly reading and graphs." Furthermore, she reported that "He will not be able to demonstrate his knowledge on the examination but will rather demonstrate the barriers imposed by his disabilities." However, there is an abundance of standardized test scores that consistently reflect Average to Superior performance under timed conditions relative to select cohorts that likely are higher functioning cognitively and academically as compared to the general population (e.g., PSAT, SAT, ACT, MCAT). Mr. Sampson's level of performance on standardized, timed, high stakes exams do not support Dr. Wasserstein's interpretations. As discussed below, neither do the assessment results that she reviews in her 2020 evaluation report.
    - Dr. Wasserstein stated that Mr. Sampson has "a significant deficit in spelling." However, A spelling score of 105, which is ranked at the 63rd percentile compared to the general population is not indicative of poor spelling or a deficit in spelling. Spelling ability is also not relevant to taking the computer-based, multiple-choice Step 1 exam.
    - Dr. Wasserstein stated that Mr. Sampson is "clearly impaired in the visual attention domain (e.g., Sustained Visual Attention was ranked at the 1st percentile); his impulsivity is likely to have a negative impact on his functioning, such as rushing and making careless errors when engaged in visual tasks like reading; severely

impaired sustained visual attention indicates that his reading comprehension is likely to be impacted, especially during lengthy standardized exams." There is little if any evidence from adulthood to support this finding. When deficient scores are present, it is important to provide ecological validity for the findings (e.g., how are the identified deficits manifesting in real world performances?). Such manifestations are lacking. Rather, SAT, MCAT, ACT are lengthy standardized tests that require reading comprehension under standardized timed conditions. Although Dr. Wasserstein indicated that reading comprehension is likely to be impacted on such tests due to severely impaired sustained visual attention, there is no evidence of this.

- Discrepancies are misinterpreted as evidence of impairment throughout Dr. Wasserstein's report. For example, according to Dr. Wasserstein, index level discrepancy comparisons showed that 5 out of 7 comparisons were statistically significant and 3 of the 5 significant differences were rare in the general population. Dr. Wasserstein's interpreted these findings as indicative of "rocky, uneven cognitive terrain." Likewise, she reported, "his nonverbal reasoning ability (PRI) was significantly weaker than other cognitive domains. Consequently, Mr. Sampson has a pronounced metaphorical 'limp' between his various thinking skills, the extent of which creates significant handicaps on tasks that rely on perceptual reasoning and working memory, such as reading comprehension." However, statistically significant and unusual differences between scores, when the lower of the two scores in the comparison is at least Average, simply means that the higher score represents much stronger than Average ability (e.g., Superior; Very Superior). Moreover,

scores in the Superior to Very Superior range are rare in the general population, as most people rarely score at the >99th percentile. Thus, what makes a difference between Average and Very Superior performance unusual is the fact that most people do not score in the Very Superior range in any cognitive domain. Indeed, the 99th percentile means that the person performed as well as or better than 99% of individuals in the normative sample. Rather than interpreting a statistically significant and unusual difference between Average and Very Superior performance as evidence of impairment, it ought to be interpreted as reflecting a cognitive area of strength that is rarely found in the general population. Moreover, most people have at least two statistically significant difference in their cognitive ability profiles, yet most people are not disabled. Where scores fall on the ability continuum relative to most people matters.

7. I have significant doubt about whether all diagnoses that Mr. Sampson has received are warranted under the applicable criteria for diagnosing mental impairments. However, I have not had sufficient opportunity to review all the relevant information relating to each diagnosis. That said, it is my opinion that the data I reviewed clearly do not support a Specific Learning Disorder in Written Expression for the following reasons.

    a. All standardized achievement test scores in the area of writing ranged from Average to Superior, indicating no evidence of impairment.

    b. Many medical school faculty commented on his writing positively. A few examples follow.

        1. **Course Name**: "Medicine": "wrote good notes" and "**Formulation and Write Up**: **Outstanding**"

    2. **Course Name**: "Introduction to Clinical Medicine-Odd Year": "His write ups were **stellar**"

    3. **Course Name**: "Radiology": "Robert submitted a **thorough paper** on Pulmonary Embolism Radiology and Management"

    4. **Course Name**: "Ob/**Gyn**": "demonstrating…**well organized notes**"

    5. **Course Name**: "Pediatrics": "**written** and oral case discussions **reflected evidence of his ability to use scientific literature effectively** to enhance his medical knowledge"

  c. Performance in the area of writing based on standardized test performance under timed conditions consistently reflect scores near or above the 90th percentile relative to selected cohorts who likely function cognitively and academically at a level that higher than the average person from the general population.

8. As noted, I have not had adequate time to fully study the various evaluations that Mr. Sampson submitted in support of this request, but based upon my preliminary analysis I also believe that, at a minimum, there are significant questions regarding whether the other diagnoses that he has received are warranted under the criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders. In other words, it is not clear to me that he has either any Specific Learning Disorder or ADHD. In all events, however, and as noted above, his records do not reflect that he is substantially limited in his ability to read, concentrate, or take tests, as compared to most people in the general population.

9. Mr. Sampson states in his declaration that he has had significant difficulties in academic functioning since childhood. He also says that his academic accomplishments "have required a lifetime of accommodations and mitigating measures," and that "his teachers

consistently noted my struggles with attention, focus and reading." These statements are not consistent with what I have seen in his records, which reflect no academic interventions at any point prior to his time in medical school and scant references by teachers to him "struggling" with "attention, focus and reading."

10. What the records instead show is that, like most people, Mr. Sampson has variable abilities. He does exceedingly well in math, but he performs less well - although by and large still well above average - in other areas. This is seen in his diagnostic assessments and on several high-stakes tests that he has taken, where he performed very well across all tested areas using the skills and abilities that are measured in diagnostic assessments.

11. I have reviewed the evaluation reports that were prepared for Mr. Sampson by Dr. Wasserstein, Anderson, and Michels, as well as the letters from his psychologist, Dr. Aronson. In my opinion, they do not show that Mr. Sampson is substantially impaired in his learning, reading, thinking, cognitive processing, or taking tests relative to the general population.

12. In my judgment, the records do not present a substantive basis for providing Mr. Sampson with any disability-based accommodations for the medical licensing examination.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 29, 2022.

_____

Dawn P. Flanagan, Ph.D.