**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

ROBERT SAMPSON,                          :
                                         :
                                         :    CIVIL ACTION NO. 2:22-cv-05120-JMA
             v.                          :
                                         :
NATIONAL BOARD OF MEDICAL                :
EXAMINERS.                               :
                                         :

**MEMORANDUM IN SUPPORT OF SAMPSON'S REQUEST
FOR REASONABLE ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS……………………………………………………………………………i

TABLE OF AUTHORITIES……………………………………………………………………ii

ARGUMENT

    A.  INTRODUCTION…………………..…..…………………………………………..…1

    B.  PROCEDURAL HISTORY……………………………………………………………1

    C.  SAMPSON IS A PREVAILING PARTY ENTITLED TO REASONABLE
        ATTORNEYS' FEES AND COSTS……………………………….……………………4

        1.  Congress Enacted Fee-Shifting Provisions To Ensure That Civil Rights
            Plaintiffs Such as Sampson Have Access to Competent Counsel…………………4

        2.  Sampson Is a Prevailing Party……………………………………………………5

    D.  THE LODESTAR DETERMINES SAMPSON'S REASONABLE
        ATTORNEYS' FEES…………………………………………………………………9

        1.  The Hourly Rates Requested for Sampson's Counsel Are Reasonable…………..10

            i.  Charles Weiner……………………………………………...……………12

            ii.  Mary Vargas……………………………..…………………………………13

           iii.  Michael Stein……………………………………………………………15

        2.  Sampson's Attorneys Seek Fees for Time Reasonably Spent for
            Sampson To Prevail……………………………………………...………16

        3.  Lodestar Calculation………………………………………………..…18

    E.  SAMPSON'S REQUESTED REIMBURSEMENT OF COSTS IS REASONABLE…...19

    F.  CONCLUSION………………………………………………………………..20

CERTIFICATE OF SERVICE………………………………………………………………22

i

## TABLE OF AUTHORITIES

<u>CASES</u>

*Agudath Isr. of Am. v. Hochul*, 20-cv-04834(KAM)(RML), 2021 WL 5771841
(E.D.N.Y. Dec. 6, 2021) (Matsumoto, J.)………………………………………....11

*Aptive Env't, LLC v. Vill. of E. Rockaway*, 19-CV-3365(JMA)(SIL), 2022 WL 5434178
(E.D.N.Y. July 8, 2022) (Locke, M.J.), *adopted*, 2022 WL 4376618 (E.D.N.Y.
Sept. 20, 2022) (Azrack, J.)……………………………………...…..…………12

*Aptive Env't, LLC v. Vill. of E. Rockaway*, 19-CV-3365(JMA)(SIL), 2022 WL 4376618
(E.D.N.Y. Sept. 20, 2022) (Azrack, J.)…...……………………………………12

*Argenyi v. Creighton Univ.*, 703 F.3d 441 (8th Cir. 2013)………………….………15, 16

*Berger v. Nat'l Bd. of Med. Exam'rs*, 19-cv-00099, 2019 WL 4040576 (S.D. Ohio
Aug. 27, 2019)……………………………………………………………14

*Blum v. Stenson*, 465 U.S. 886 (1984)……………………………………………11

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598
(2001)……………………………………………………………..…..6, 7

*C.A. v. New York City Dep't of Educ.*, 20 Civ. 2101(AMD)(VMS), 2022 WL 673262
(E.D.N.Y. Feb. 16, 2022) (Scanlon, M.J.), *adopted*, 2022 WL 673272 (E.D.N.Y.
Mar. 7, 2022) (Donnelly, J.)……………………………………..………..12

*Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)………..………...18, 19

*Chex v. CCI Contr., Inc.*, 21-CV-3011(ARR)(SIL), 2022 WL 17787542 (E.D.N.Y.
Aug. 5, 2022) (Locke, M.J.)……………………………………………12

*City of Riverside v. Rivera*, 477 U.S. 561 (1986)……………………………...……5, 6, 9

*Cotton v. NY Minute Movers, Inc.*, 20-CV-6153-CBA-SJB, 2023 WL 2499132 (E.D.N.Y.
Mar. 14, 2023) (Bulsara, J.)……………………………………………12

*Featherstone v. Pac. Northwest Univ.*, No. 1:CV-14-3084-SMJ, 2014 WL 3640803
(E.D. Wash. July 22, 2014)………………………………………..…15, 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)……………………………………7, 10, 17

*Hines v. City of Albany*, 613 F. App'x 52 (2d Cir. 2015)……………………………7

*J.P. v. County Sch. Bd.*, 641 F. Supp. 2d 499, 511-12 (E.D. Va. 2009)……………….………17

*Kirk v. N.Y. St. Dep't of Educ.*, 644 F.3d 134 (2d Cir. 2011)………………..……………………7

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)…………………………………….7

*Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274 (1989)…………………………………………11

*N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n*,
        272 F.3d 154 (2d Cir. 2001)……………………………………………………………..6, 7

*Noboa v. Quality Homes USA, Inc.*, 22-CV-0513(JMA)(JMW), 2023 WL 35030 (E.D.N.Y.
        Jan. 4, 2023) (Azrack, J.)……………………………………………………………………11

*Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546 (1986)………….10

*Perdue v. Kenny A.*, 559 U.S. 542 (2010)…………………………………………………………10

*Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009)………………………….7

*Pres. Coalition v. Fed. Transit. Admin.*, 356 F.3d 444 (2d Cir. 2004)…………………………..7, 9

*Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020)…………………………15, 16

*Roberson v. Giuliani*, 346 F.3d 75 (2d Cir. 2003)……………………………………....…….7

*Sampson v. Nat'l Bd. of Med. Exam'rs*, No. 23-3 (2d Cir. May 1, 2023)………………………3, 4

*Thomas v. City of New York*, 14-CV-7513 (ENV) (VMS), 2017 WL 6033532 (E.D.N.Y.
        Dec. 1, 2017) (Scanlon, J.)…………………………………………..……………………12

*Ustrak v. Fairman*, 851 F.2d 983, 990 (7th Cir. 1988)………………………………………18

## A. INTRODUCTION

Robert Sampson achieved all of his aims in bringing this lawsuit, obtaining the testing accommodations that he needed to have an equal opportunity to take—and pass—Step 1.  Prior to bringing this lawsuit, Sampson had applied seven times for testing accommodations from the National Board of Medical Examiners ("NBME").  Each time, the NBME rejected his request. Even after Sampson brought this lawsuit, NBME persisted in its refusal to provide accommodations, vigorously contesting a preliminary injunction hearing and then appealing all aspects of this District Court's ruling.  Although the Second Circuit vacated the preliminary injunction, it did so on technical grounds, clearing the way for the District Court to reissue the preliminary injunction with more details about the companion case that Sampson had filed against Stony Brook University.  After remand, the District Court stated on the record in a status conference in the *Sampson v. Stony Brook University* case its intent to reissue the preliminary injunction against NBME after allowing the NBME an opportunity to be heard, and that very afternoon, NBME relented and stated that it would no longer object to Sampson taking the Step examinations with accommodations.  With these accommodations finally in place, Sampson passed Step 1.  Now that Sampson has achieved all of the aims in his lawsuit, the District Court ordered the parties to brief fees, and this fee petition follows.

## B. PROCEDURAL HISTORY

In June 2022, NBME rejected for the seventh time Sampson's request for accommodations.  Prior to filing suit, Sampson's attorneys contacted NBME's attorneys in an attempt to resolve this matter without the need for litigation.  Ex. A, Decl. of Charles Weiner ("Weiner Decl."), at ¶ 22.  NBME did not respond substantively, forcing Sampson to file this lawsuit in August 2022 and seek a preliminary injunction.  *Id.* ¶¶ 23-27.

The District Court ordered expedited briefing and, in October 2022, held a three-day preliminary injunction hearing.  On December 2, 2022, the District Court granted in full Sampson's motion for preliminary injunction, ordering NBME to provide the accommodations Sampson sought on the Step 1 examination including double time.  Dkt. No. 46.

Pursuant to the District Court's order, NBME issued Sampson an accommodations ticket for him to take the Step 1 examination the week of May 15, 2023, with accommodations.  Ex. C, Decl. of Mary Vargas ("Vargas Decl."), at ¶ 34.  NBME, however, then filed an interlocutory appeal challenging the entirety of the District Court's decision granting the preliminary injunction.  The Second Circuit heard oral argument on April 18, 2023, with the NBME vigorously contesting all aspects of the preliminary injunction, arguing, *inter alia*, that permitting Sampson to take the test with his requested accommodations threatened the public interest. During the oral argument, the Second Circuit asked questions about the status of the *Sampson v. Stony Brook University* case.  *See* Dkt. No. 48 (referencing oral argument).

Two days later, on April 20, 2023, the District Court issued a status update regarding the *Sampson v. Stony Brook University* case and ordered Sampson to file this status update with the Second Circuit.  *Id.*  The District Court explained that Sampson and Stony Brook University had agreed that Sampson could have until August 12, 2024, to complete his medical studies, clearing the way for him to resume his medical education if he passed Step 1.  *Id.*  In response, NBME filed a letter with the Second Circuit challenging the District Court's description of the record. NBME Letter, *Sampson v. Nat'l Bd. of Med. Exam'rs*, No. 23-3, Dkt. No. 111 (Apr. 21, 2023).

On May 1, 2023, the Second Circuit issued a decision vacating the preliminary injunction on technical grounds.  *Sampson v. Nat'l Bd. of Med. Exam'rs*, No. 23-3 (2d Cir. May 1, 2023). The Second Circuit stated in footnote that it could not consider the District Court's April 20

2

letter because it was not part of the record at the time that the District Court entered the injunction against NBME.  Slip op. at 4 n.1.  Without the letter in the record, the Second Circuit stated that there was nothing in the record to show that "Sampson is likely to prevail against Stony Brook or secure a favorable settlement if he passes Step 1."  Slip op. at 4.  The Second Circuit stated that on remand, the District Court "may reevaluate the motion for preliminary injunction" and consider developments in the Stony Brook case.  Slip op. at 5.

On remand, the District Court convened a status conference in the Stony Brook case that took place on May 3, 2023.  During the status conference, the District Court proposed that Stony Brook and Sampson stipulate that Stony Brook permit Sampson until August 12, 2024, to complete his medical education and that Sampson be permitted to proceed with his clinical studies after passing Step 1.  Ex. B, Tr. 4:3-10.  The District Court stated that if this proposal were accepted—which it was—then it would reissue the preliminary injunction against NBME once NBME and Sampson had an opportunity to be heard.  *Id.* Tr. 3:19-4:10, 16:3-23.

Later that same day, after Sampson and Stony Brook entered into the stipulation and facing imminent re-issuance of the injunction, NBME filed a letter with the Court stating that it would provide the accommodations previously ordered by the Court.  Dkt. No. 52.  The following day, on May 4, 2023, the District Court held a status conference in the *Sampson v. NBME* case, in which NBME made a binding promise to adhere to its changed position to permit Sampson to take the Step examinations with accommodations, and this Court noted the significance of NBME "put[ting] on the record in a recorded conference to a federal judge" its binding promise to provide the requested accommodations for all Steps of the United States Medical Licensing Examination.  Ex. D, 4:14-19; 5:1-17.

The District Court then ordered the parties to brief fees, Dkt. No. 54, and this fee petition follows in compliance with that order.

## C.  SAMPSON IS A PREVAILING PARTY ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS

The  Americans with Disabilities Act explicitly endows this Court with the authority to award attorneys' fees and costs to prevailing parties.  42 U.S.C. § 12205 (stating that courts "may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs").

### 1.  Congress Enacted Fee-Shifting Provisions To Ensure That Civil Rights Plaintiffs Such as Sampson Have Access to Competent Counsel

As the Supreme Court has explained, "[fee] awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."  *City of Riverside v. Rivera*, 477 U.S. 561, 577-78 (1986). Congress accordingly "expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance."  *Id.* at 575 (citations and quotation marks omitted).  For civil rights plaintiffs to be able to vindicate these rights, they must have "competent counsel" willing "to expend the amount of time . . . necessary to litigate the case properly" and "obtain redress for their grievances."  *Id.* at 579-80.

Sampson's case was clearly meritorious.  Once he finally had the accommodations that this Court determined he needed, Sampson passed Step 1.  Sampson's success was made possible only because he retained counsel willing to take on his case at considerable risk.

Since victory is far from assured in cases like Sampson's, many attorneys decline this

type of case, including a previous attorney of Sampson's who attempted to resolve this matter amicably via correspondence with NBME but when NBME refused overtures from counsel, this prior attorney judged the case too risky to litigate.  Ex. E, Decl. of Jo Anne Simon ("Simon Decl."), at ¶¶ 12-13.  Attorneys who do take on cases such as Sampson's must turn down other paying work knowing that they may not get compensated for taking such risk.  *Id.* ¶¶ 13, 17. Additionally, counsel who take on such a case must devote considerable time and resources in litigating a motion for preliminary injunction on an expedited basis, all while going up against defendants such as NBME which have deep pockets.  Ex. F, Decl. of Larry Berger ("Berger Decl."), at ¶¶ 9, 11-12.

Sampson's attorneys took on his case at substantial risk, necessarily devoting a substantial number of hours to this case in the compressed time frame necessary to ensure that Sampson could take—and pass—Step 1 before it was too late.  Ex. C, Vargas Decl., at ¶¶ 19, 20, 26.  As this Court found, it was in the public interest for Sampson to have that opportunity to take Step 1.  Dkt. No. 46, at 39-41.  In this manner, the fee-shifting provision fulfilled Congress' goal in recruiting counsel as "private attorneys general" to bring this meritorious civil rights lawsuit.  *See Rivera*, 477 U.S. at 575.

## 2. Sampson Is a Prevailing Party

The Second Circuit has distilled the Supreme Court's test for "prevailing party" status into two requirements.  First, there must be a "material alteration of the legal relationship of the parties."  *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n*, 272 F.3d 154, 158 (2d Cir. 2001) (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).  The Supreme Court, in what it has termed a "generous formulation," has explained that "plaintiffs may be considered 'prevailing

parties' for attorneys' fees purposes if they succeed on *any* significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphases added) (citation omitted); *see also, e.g.*, *Hines v. City of Albany*, 613 F. App'x 52, 53 (2d Cir. 2015) ("It is sufficient that the plaintiff succeeded on any significant issue in the litigation, regardless of the magnitude of the relief obtained.") (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998)).

Second, that material alteration must have judicial imprimatur. *N.Y. State Fed'n of Taxi Drivers*, 272 F.3d at 158 (quoting *Buckhannon*, 532 U.S. at 605). This second prong is also not a demanding test. The Second Circuit has explained that "judicial action other than a judgment on the merits or a consent decree can support an award of attorneys' fees, so long as such action carries with it sufficient judicial imprimatur." *Roberson v. Giuliani*, 346 F.3d 75, 81 (2d Cir. 2003). A preliminary injunction that results in permanent fruits of victory for the plaintiff is a basis for a fee award. *See, e.g.*, *Kirk v. N.Y. St. Dep't of Educ.*, 644 F.3d 134, 138-39 (2d Cir. 2011) (plaintiff who retains the fruits of victory of a preliminary injunction later vacated is prevailing party). The Second Circuit has held that sufficient judicial imprimatur is also present when a defendant relents "under threat of further injunctive relief." *Pres. Coalition v. Fed. Transit. Admin.*, 356 F.3d 444, 452 (2d Cir. 2004). Further, the Second Circuit has stated that judicial imprimatur occurs when there is "extensive involvement and close management of the case" by the district judge who plays an integral role in resolving the case. *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 152-53 (2d Cir. 2009).

In this case, Sampson achieved all that he sought in this lawsuit. The NBME had rejected his request for testing accommodations no fewer than seven times before he filed this lawsuit. It was only after the District Court granted in full Sampson's motion for preliminary injunction that

6

NBME permitted Sampson to register for the Step 1 examination with accommodations.  After the Second Circuit cleared the way for the injunction to be reissued and this Court stated its intent to reissue the preliminary injunction, NBME made a binding commitment to this Court that it would permit Sampson the same accommodations for the remaining Steps, ensuring that NBME cannot revert to its old ways once this case is closed.  In this manner, NBME "is now legally incapable of acting as it did before" and "it can no longer freely reverse" course and resume its prior course of action, an example of material alteration of the legal relationship between the parties that the Second Circuit has recognized.  *See, e.g.*, *id.* at 150.

There is also no doubt that Sampson achieved this result only as a result of judicial imprimatur.  As described, NBME repeatedly rejected Sampson's requests for accommodations before he brought this lawsuit.  NBME vigorously contested Sampson's motion for preliminary injunction (including offering the affidavits of five experts in opposing the motion and calling two to testify at the hearing).  It was only after this Court granted the preliminary injunction that NBME permitted Sampson to register for Step 1 with accommodations.  Although the Second Circuit vacated the preliminary injunction on technical grounds, it authorized this Court to reissue the injunction with more details about the companion case against Stony Brook that had not been in the preliminary injunction record, and this Court had stated on the public record its intent to reissue the injunction accordingly.  Given such judicial imprimatur clearing the way for Sampson to take Step 1 with accommodations, NBME made a binding commitment to this Court that it would provide Sampson with accommodations on all Steps, an about-face from just two weeks earlier when NBME had argued strenuously at oral argument in the Second Circuit that permitting Sampson to take—and pass—Step 1 with accommodations was a danger to the public

interest. *See, e.g.*, *Pres. Coalition*, 356 F.3d at 452 (judicial imprimatur present when a

defendant relents "under threat of further injunctive relief").

Policy considerations further support an award of attorneys' fees and costs. NBME

dropped all challenge to his requests for accommodations only after it became clear this Court's

preliminary injunction would be reissued. Sampson secured the necessary judicial imprimatur

first by obtaining the preliminary injunction as originally issued, then by having the Second

Circuit clear the way for the injunction to be reissued with more information on the record about

the *Stony Brook* case, and then when this Court stated its intent to so reissue the injunction.

NBME's surrendering at the last minute before the injunction reissued does not change the fact

that Sampson was forced to bring this lawsuit to obtain the results he did, incurring significant

attorneys' fees and costs in the process.

Finally, when considering fee petitions, courts consider the purpose of fee-shifting

provisions and the practical consequences of withholding attorneys' fees in cases similar to the

case at bar. *See, e.g.*, *Rivera*, 477 U.S. at 578 ("The function of an award of attorney's fees is to

encourage the bringing of meritorious civil rights claims which might otherwise be abandoned

because of the financial imperatives surrounding the hiring of competent counsel.") (citation and

quotation marks omitted). This was already a case in which Sampson had difficulty finding

competent counsel to represent him in this matter, and his attorneys undertook this case at great

risk. A decision that allows testing entities to opt out of paying fees by surrendering when the

writing is on the wall would make it even more difficult for future plaintiffs with meritorious

claims to find competent counsel willing to forego other work more certain to result in fees. This

would be a particularly concerning outcome in this context where there is already an

extraordinary difference between the resources of a student and the resources of the NBME in

litigating cases such as this case.

Since Sampson obtained all of the accommodations that he sought in this case as a result of judicial imprimatur causing the NBME to reverse course and make a binding commitment to this Court not to revoke those accommodations, Sampson far exceeds the Supreme Court's low threshold requirement that prevailing plaintiffs succeed on *some* issue and achieve *some* of the benefit sought in bringing the litigation. *Hensley*, 461 U.S. at 433.

## D.  THE LODESTAR DETERMINES SAMPSON'S REASONABLE ATTORNEYS' FEES

The Supreme Court has established the framework and methodology for calculating the reasonable attorneys' fees to award a prevailing party in civil rights cases. *Id.* at 433-37.  This calculation, termed the "lodestar," is based upon "the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate" for the attorney's services. *Id*. at 433.  As the Supreme Court has explained, "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (emphasis omitted).  Accordingly, there is a "strong presumption" that the lodestar is reasonable. *Id.* at 546, 554; *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 565 (1986).

Sampson's request for reasonable attorneys' fees is therefore based on the lodestar method.  The two parts of the lodestar calculation—(1) hourly rates; and (2) hours reasonably expended on the matter—are taken up in turn below.

9

### 1. The Hourly Rates Requested for Sampson's Counsel Are Reasonable

Sampson seeks reasonable attorneys' fees based on the market rates that are "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The lodestar is calculated using current rates, in order to offset the effects of inflation and lost interest resulting from delay in payment of fees.  *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283-84 (1989).

Given Sampson's inability to find counsel within the Eastern District of New York and need for out-of-town counsel, a reasonable billing rate should reflect the risk and cost of the litigation and the market for his attorneys' services where they are based.  The attorneys in this case have nonetheless exercised billing judgment by charging at the prevailing rates in the Eastern District of New York even though, particularly in the case of the attorneys at Stein & Vargas, which is based in Washington, D.C., they can command significantly higher rates in their home jurisdictions.[1]

This Court has described reasonable rates in the Eastern District of New York as follows:

> In recent years, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates. . . . Some judges have recognized slightly higher ranges in this district of $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *15 (E.D.N.Y. Dec. 9, 2019) (internal citations and quotation marks omitted).

*Noboa v. Quality Homes USA, Inc.*, 22-CV-0513(JMA)(JMW), 2023 WL 35030, at *2 (E.D.N.Y. Jan. 4, 2023) (Azrack, J.).  Further, "there is also precedent within this District awarding rates as

---

[1] NBME's attorneys are likewise based in the Washington, DC office of Perkins Coie. Perkins Coie bills at rates well above those requested by Sampson's attorneys.  *See* Ex. G, Decl. of Robert Dwyer ("Dwyer Decl."), at ¶ 11(c) (noting that in 2019, Perkins Coie attorneys billed from $605 to $1,240/hour).

high as $600 depending upon the experience of the lawyer and the complexity of the matter,"[2]

and this Court has specifically noted factors in awarding such higher rates, including but not

limited to "the complexity of the case, the attorneys' experience litigating similar matters,

zealous litigation of this matter from both sides," and the rates within Eastern District of New

York.  *Aptive Env't, LLC v. Vill. of E. Rockaway*, 19-CV-3365(JMA)(SIL), 2022 WL 4376618,

at *3 (E.D.N.Y. Sept. 20, 2022) (Azrack, J.).

      With respect to partners with twenty or more years of experience, "[a]n hourly rate of

$450 remains within the range of rates found reasonable" in the Eastern District of New York.

*Thomas v. City of New York*, 14-CV-7513 (ENV) (VMS), 2017 WL 6033532, at *5 (E.D.N.Y.

Dec. 1, 2017) (Scanlon, J.).  This decision relies on case law several years old in determining

reasonable rates, further lending credence to the reasonableness of these rates in 2023.  *See also,*

*e.g.*, *Cotton v. NY Minute Movers, Inc.*, 20-CV-6153-CBA-SJB, 2023 WL 2499132, at *2

(E.D.N.Y. Mar. 14, 2023) (Bulsara, J.) (awarding $400/hour to an attorney serving as of counsel

who graduated from law school in 2009); *Chex v. CCI Contr., Inc.*, 21-CV-3011(ARR)(SIL),

2022 WL 17787542, at *9 (E.D.N.Y. Aug. 5, 2022) (Locke, M.J.) (recommending $500/hour for

attorney admitted to bar in 1996); *C.A. v. New York City Dep't of Educ.*,

20 Civ. 2101(AMD)(VMS), 2022 WL 673262, at *5 (E.D.N.Y. Feb. 16, 2022) (Scanlon, M.J.)

(recommending $425/hour for an attorney with 14 years of relevant litigation experience),

*adopted*, 2022 WL 673272 (E.D.N.Y. Mar. 7, 2022) (Donnelly, J.); *Agudath Isr. of Am. v.*

*Hochul*, 20-cv-04834(KAM)(RML), 2021 WL 5771841, at *7 (E.D.N.Y. Dec. 6, 2021)

---

[2] *See Aptive Env't, LLC v. Vill. of E. Rockaway*, 19-CV-3365(JMA)(SIL), 2022 WL 5434178, at *6-7 (E.D.N.Y. July 8, 2022) (Locke, M.J.) (collecting cases), *adopted*, 2022 WL 4376618 (E.D.N.Y. Sept. 20, 2022) (Azrack, J.).

(Matsumoto, J.) (awarding $550/hour for a 1994 law school graduate and $500/hour for an attorney with 15 years' experience).

Based on these fee decisions, Sampson's counsel seek rates in the range of $425 to $450 per hour.  As described below, all three of Sampson's attorneys are partners with extensive experience litigating disability discrimination cases, including testing accommodations cases. They have each been recognized as leading disability advocates and even more specifically as leading litigators in the field of testing accommodations for individuals with disabilities.  Ex. F, Berger Decl., at ¶¶ 5-10; Ex. E, Simon Decl., at ¶¶ 14-17.  Their familiarity with the ADA statutory and regulatory provisions applicable to testing entities, the neuropsychological evaluations typical for individuals seeking accommodations, and familiarity with the NBME Step examinations allowed them to work efficiently in this matter compared to attorneys with no familiarity with any of these areas.  The requested rates for Sampson's attorneys are therefore well within the range of reasonable rates in this District.  Ex. G, Dwyer Decl., at ¶¶ 11(a), 11(c), 12(e); Ex. H, Decl. of Maia Goodell, at ¶¶ 13-14.

### i.  Charles Weiner

Weiner was co-lead counsel in this case.  The requested rate for Weiner, who graduated from law school in 1988 and has 35 years of experience in litigation, is $450/hour.  Ex. A, Weiner Decl., at ¶ 5.

Weiner specializes in representing students with disabilities, with a particular focus on cases involving accommodations in post-secondary entrance exams and professional licensing and certification examinations.  *Id.* ¶¶ 10, 12.  Weiner also counsels individuals on the applications process for testing accommodations, appeals from denials of accommodations and has litigated cases against testing entities including the NBME and its osteopathic counterpart,

the National Board of Osteopathic Medicine (NBOME).  *Id.* ¶¶ 11-12.  For instance, in *Berger v. Nat'l Bd. of Med. Exam'rs*, 19-cv-00099, 2019 WL 4040576 (S.D. Ohio Aug. 27, 2019), Weiner successfully obtained a preliminary injunction requiring NBME to provide testing accommodations.

Weiner has spoken extensively at the national, state and local level on the rights of individuals with disabilities and have been invited to speak at several national conferences by the Association for Higher Education and Disability (AHEAD), Coalition for Disability Access in Health Science Education, American Bar Association, American Speech-Language-Hearing Association (ASHA) and the National Stuttering Association.  Ex. A, Weiner Decl., at ¶ 13. Weiner served as a Commissioner on the American Bar Association's Commission on Disability Rights from 2014 to 2017.  *Id.* ¶ 14.

### ii.  Mary Vargas

Vargas was co-lead counsel in this case.  The requested rate for Vargas, who graduated from law school in 1998 and has 25 years of experience litigating disability discrimination cases, is $450/hour.  Ex. C, Vargas Decl., at ¶¶ 7, 10, 24.

Vargas graduated with honors from the University of Connecticut School of Law. *Id.* ¶ 7.  Throughout the majority of her legal education Vargas advocated on issues relating to disability rights as part of her work for the Advocacy for Persons with Disabilities Clinic at Yale Law School, ultimately serving as a Student Director of that clinic.  *Id.*

After completing law school, Vargas received a fellowship from the Skadden Foundation to engage in nationwide impact litigation at the National Association of the Deaf on behalf of individuals with disabilities in health care.  *Id.* ¶ 8.  Subsequently, she co-founded the law firm

13

Stein & Vargas, LLP with the goal of continuing to do impact litigation on behalf of individuals with disabilities. *Id.* ¶ 9.

During Vargas' 25 years of experience litigating civil rights matters throughout the United States, she has been at the leading edge of challenging and important disability rights cases. *Id.* ¶ 11 (representative list of cases). Of particular relevance to this case, Vargas has litigated extensively in the area of accommodations for medical students, including testing accommodations, representing clients against testing entities such as NBME and the National Board of Osteopathic Medicine (NBME's counterpart with respect to osteopathic students). *Id.* ¶¶ 11, 19. Vargas' accomplishments include litigating the leading case in the field of testing accommodations for medical students—*Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020) (served as lead counsel at the preliminary injunction hearing and successfully argued the case before the Third Circuit). In Sampson's case, *Ramsay* was cited repeatedly by this Court and also by the Second Circuit. Vargas has also represented medical students with disabilities in leading cases including *Argenyi v. Creighton Univ.*, 703 F.3d 441 (8th Cir. 2013) (successfully argued appeal and was lead trial counsel on remand in verdict for deaf client whose medical school had refused to provide necessary accommodations); *Featherstone v. Pac. Northwest Univ.*, No. 1:CV-14-3084-SMJ, 2014 WL 3640803 (E.D. Wash. July 22, 2014) (co-counsel in case obtaining preliminary injunction requiring a medical school to accept a deaf student whose admission it had withdrawn on the basis of disability).

In 2016, Vargas, along with her law partner Michael Stein, was part of the legal team that received the Eagle Award for groundbreaking disability rights litigation for work in *Argenyi*. Ex. C, Vargas Decl., at ¶ 14. She also received the 2017 FARE Vision Award for Advocacy on behalf of individuals with food allergies from Food Allergy Research and Education, and the

2010 Advocate of the Year Award for advocacy on behalf of people living with chronic pain from the American Academy of Pain Management.  *Id.*

### iii.  Michael Stein

Michael Stein was the lead author on briefs, researching and drafting the briefs in support of the motion for preliminary injunction, the proposed conclusions of law following the preliminary injunction hearing, the appellee's brief in the Second Circuit, and the fee petition. Ex. I, Declaration of Michael Stein ("Stein Decl."), at ¶ 22.  The requested rate for Stein, who graduated from law school in 2006 and has 16 years of experience in disability discrimination litigation, is $425/hour.  *Id.* ¶¶ 4, 6-10.

Stein graduated from Princeton University and from Harvard Law School where he was Notes Editor for the *Harvard Law Review*.  *Id.* ¶¶ 3-4.  He clerked for the Honorable William G. Young in the United States District Court for District of Massachusetts in 2006-2007.  *Id.* ¶ 5. He was a Skadden Fellow with the National Association of the Deaf from 2007 through 2009. *Id.* ¶¶ 6-8.  Since 2009, he has been a partner with the firm Stein & Vargas, LLP litigating disability discrimination cases throughout the United States.  *Id.* ¶¶ 9-10.

Stein has represented individuals in landmark cases involving individuals with disabilities.  *Id.* ¶ 13 (list of representative cases).  In particular, Stein has served as counsel in cases of national importance involving medical students with disabilities, including cases against testing entities such as NBOME and NBOME.  *Id.* ¶¶ 13, 14.  Representative cases include *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251 (3d Cir. 2020) (leading case on accommodations for medical students with disabilities); *Argenyi*, 703 F.3d 441 (holding that medical schools must provide deaf students with an opportunity equal to that of hearing students); *Featherstone v. Pac. Northwest Univ.*, No. 1:CV-14-3084-SMJ, 2014 WL 3640803

(E.D. Wash. July 22, 2014) (entering a preliminary injunction requiring a medical school to accept a deaf student whose admission it had withdrawn on the basis of disability).

### 2. Sampson's Attorneys Seek Fees for Time Reasonably Spent for Sampson To Prevail

The second part of the lodestar calculation is based on the hours "reasonably expended" on the case. *Hensley*, 461 U.S. at 433-34. Counsel for the prevailing party should exercise "billing judgment" and "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. Counsel "should submit evidence supporting the hours worked." *Id.* at 433.

Sampson's attorneys have kept and provided meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks. Sampson's attorneys also took care to remove any time not spent efficiently. Sampson's attorneys have also exercised billing discretion in not seeking fees for paralegal assistance. Fee expert Robert Dwyer, who has fifty years of litigation experience and reviews for reasonableness the billing records of the large law firms where he has served as partner, reviewed the time records in this case and opined that Sampson's attorneys have reasonably exercised billing discretion in seeking fees for a reasonable number of hours. Ex. G, Dwyer Decl., at ¶¶ 1-7, 11(b), 12(c), 12(d), 12(f). For instance, Sampson and NBME each had a team of three attorneys which was made necessary by the fact that this case required intensive litigation in a short period of time even as the attorneys also had other cases to litigate. *Id.* ¶ 11(b).

Sampson's attorneys' fee request is based primarily on time spent on the following issues essential to the outcome in this case:

16

- Client counseling;
- Factual investigation;
- Correspondence with NBME;
- Drafting the complaint;
- Briefing on the motion for preliminary injunction;
- Preparation for preliminary injunction hearing;
- Three-day preliminary injunction hearing;
- Post-hearing briefing, including proposed findings of fact and conclusions of law;
- Appellate briefing;
- Fee petition

Each of these categories of work was necessary to achieve the outcome in this case.

Sampson's complete success in obtaining the relief sought depended not only on prevailing at the preliminary injunction hearing (such that the injunction could be reissued on remand) but also in defending against NBME's appeal that sought to totally undermine the preliminary injunction and prevent Sampson from taking Step 1 with accommodations.  This appellate work was necessary to clear the way for the injunction to reissue and for Sampson to obtain all of the benefits that he sought in this lawsuit.  *See, e.g., Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("[A] plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage."); *Ustrak v. Fairman*, 851 F.2d 983, 990 (7th Cir. 1988) ("[W]hen the defendant appeals and the plaintiff incurs expenses in defending against the appeal that are reasonable even though they are not crowned by complete success, ordinarily he should be entitled to reimbursement of those fees; he had no choice but to incur them or forfeit his victory in the district court."); *J.P. v. County Sch. Bd.*, 641 F. Supp. 2d 499, 511-12 (E.D. Va. 2009) (awarding fees for work on appeal that though unsuccessful, was "necessary to preserve" the fruits of plaintiff's victory).  After all, civil rights plaintiffs cannot walk away from defending against an appeal if they want to preserve the fruits of victory.  *J.P.*, 641 F. Supp. 2d at 511 ("If

the Plaintiffs had not defended against the appeal, the victory they secured in the district court would have been lost by default.").

This case is factually similar to *Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991). There, the plaintiff had prevailed in the district court and in the Ninth Circuit. The Supreme Court had then granted *certiorari* and vacated in light of another, then-recent Supreme Court holding. The Ninth Circuit reconsidered and reinstated its original decision. The plaintiff then sought fees for work done opposing the *certiorari* petition. The district court denied fees on the ground that the plaintiff had not been successful in opposing the petition, but the Ninth Circuit reversed, holding that the district court should have included in its calculation the fees a plaintiff incurred in unsuccessful bouts of appeals suffered on the way to victory. *Id.* at 1051-53. The result is the same in Sampson's case—total victory for the plaintiff, and fees should be awarded in full, including for fees necessarily incurred in defending against NBME's appeal. *See id.* at 1052 ("[P]laintiffs are to be compensated for attorneys' fees incurred for services that contribute to the ultimate victory in the lawsuit."). For these reasons, Sampson requests reimbursement for his reasonable attorneys' fees at both the district court and appellate levels.

### 3. Lodestar Calculation

After exercising billing discretion, the fees for each attorney calculated using the lodestar method are as follows:

| Attorney | Reasonable hours (excluding travel) | Travel time (billed at half-rate) | Requested Rate | Fee |
|---|---|---|---|---|
| Charles Weiner | 234.8 | 12.0 | $450 | $108,360.00 |
| Mary Vargas | 200.7 | 5.8 | $450 | $91,620.00 |
| Michael Stein | 123.9 | 0 | $425 | $52,657.50 |
| Total | | | | $252,637.50 |

Application of the lodestar yields $252,637.50 in reasonable attorneys' fees.

18

**E.  SAMPSON'S REQUESTED REIMBURSEMENT OF COSTS IS REASONABLE**

As the prevailing party, Sampson is entitled to an award of costs incurred in bringing this claim.  Taxable costs are defined by 28 U.S.C. § 1920, which provides for recovery of costs including: (1) court reporter fees transcripts necessarily obtained for use in the case; and (2) fees for printing and witnesses.  Additionally, the ADA provides that courts may award "litigation expenses, and costs" to the prevailing party.  42 U.S.C. § 12205.

These taxable and nontaxable costs have been fully itemized as set forth in an affidavit with supporting documentation.  *See* Ex. C, Vargas Decl., at ¶ 28 (table of costs with record citations).  These expenses, which were necessary to ensure that Sampson prevailed, fall into the following categories:

- Federal court complaint filing fees.  Sampson incurred $483.20 in costs in filing and serving the federal court complaint.  *Id.*

- Travel expenses.  Sampson's counsel incurred flight and hotel expenses in order to attend the preliminary injunction hearing and the appellate argument.  These itemized amounts total $2,468.56.  *Id.*

- Expert fees.  This case concerned expert evaluations of Sampson's learning disabilities and ADHD.  These evaluations, though costly, were necessary for Sampson to prove his need to accommodations.  At the preliminary injunction hearing, Sampson relied on the expert testimony of Dr. Jeannette Wasserstein, whose neuropsychological evaluation and testimony was instrumental to the District Court's order granting the preliminary injunction.  Dr. Wasserstein's fees totaled $13,700.00.  *Id.*

19

- <u>Appellate costs</u>.  Sampson incurred printing and editing expenses in the amount of $864.98 to comply with the Second Circuit's rules regarding the formatting and printing of appellate briefs.  *Id.*

- <u>Transcript fees</u>.  Sampson's attorneys ordered the transcript for the preliminary injunction hearing for use in the proposed findings of fact and on appeal.  Sampson's attorneys also ordered the transcripts for the status conferences following the Second Circuit's decision, in support of this fee petition.  The transcript fees that Sampson incurred totaled $3,132.21.  *Id.*

Sampson's litigation expenses for which he seeks reimbursement total $20,648.85.[3]  *Id.*

## F.  CONCLUSION

Congress specifically intended for civil rights plaintiffs to obtain reasonable attorneys' fees and costs to ensure the availability of competent counsel to serve as private attorneys general who devote the time necessary to advocate for the rights of civil rights plaintiffs. Awarding reasonable fees and costs that Sampson incurred just to be able to take Step 1 on a level playing field ensures that civil rights plaintiffs and their attorneys are adequately reimbursed for the work necessary to obtain successful results.  Otherwise, Sampson will be left with the significant attorneys' fees and costs that he was forced to incur just to be able to take Step 1 with accommodations.  For these reasons, Sampson should be awarded reasonable attorneys' fees and costs.  Straightforward application of the lodestar yields $252,637.50 in reasonable attorneys' fees and $20,648.85 in reasonable costs.

---

[3] In the exercise of discretion, Sampson's attorneys have waived costs for meals and incidentals while traveling and during the preliminary injunction hearing.

Respectfully submitted,

*s/Mary C. Vargas*
Mary C. Vargas
Michael S. Stein
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel.:    (240)793-3185
mary.vargas@steinvargas.com
michael.stein@steinvargas.com

Charles Weiner
LAW OFFICES OF CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
Tel:     (267)685-6311
charles@charlesweinerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on June 26, 2023, via electronic mail consistent with the Court's bundling instructions and agreement of counsel on the following:

Robert Burgoyne
RBurgoyne@perkinscoie.com

Caroline Mew
CMew@perkinscoie.com

Adam Mandelsberg
AMandelsberg@perkinscoie.com

The foregoing will be filed via the Court's CM/ECF system when the matter is fully briefed.

_Mary C. Vargas_
Stein & Vargas, LLP

22