**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ROBERT SAMPSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NATIONAL BOARD OF MEDICAL EXAMINERS,**<br><br>**Defendant.** | **Civil Action No. 2:22-CV-05120-JMA-AYS** |

**NBME'S OPPOSITION TO PLAINTIFF'S MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................1

I. Sampson's Lawsuit Against Stony Brook ....................................................................1

II. Sampson's Lawsuit Against NBME ....................................................................2

III. NBME's Appeal ....................................................................................................2

IV. Events After the Appeal ....................................................................................3

ARGUMENT ....................................................................................................4

I. Sampson Is Not a Prevailing Party and Is Not Entitled to a Fee Award ....................5

II. Sampson Cannot Recover Fees or Costs for Work on Appeal ....................................11

III. Sampson's Claimed Expert Witness Expenses Are Not Recoverable ........................12

CONCLUSION ....................................................................................................13

## INTRODUCTION

Plaintiff Robert Sampson ("Sampson") is not entitled to an award of attorneys' fees and costs because he is not a prevailing party in this case. Sampson pursued an emergency motion for preliminary injunction against defendant National Board of Medical Examiners ("NBME"), seeking accommodations on Step 1 of the United States Medical Licensing Examination, purportedly in an effort to avoid imminent dismissal from medical school. Although the Court awarded Sampson a preliminary injunction following those expedited, pre-discovery proceedings, the preliminary injunction was vacated on appeal — not on "technical grounds" (as Sampson asserts in his brief), but because Sampson failed to make a strong showing that he risked irreparable injury. Sampson therefore cannot be said to have prevailed on his preliminary injunction motion. Nor has he prevailed on the merits. There is thus no basis for awarding Sampson his requested attorneys' fees and costs.

## BACKGROUND

### I. Sampson's Lawsuit Against Stony Brook

On July 29, 2022, Sampson sued his medical school, Stony Brook University. *Sampson v. Stony Brook Univ.*, No. 2:22-cv-4490 (E.D.N.Y.). Sampson alleged that without court intervention against Stony Brook, he would be dismissed from medical school on or about August 12, 2022, because he did not complete medical school in seven years as required by Stony Brook. *Id.* Dkt. 1 ¶¶ 95-97. That same day, Sampson filed a motion for preliminary injunction seeking to restrain Stony Brook from dismissing him and require the school to provide him more than seven years to complete his medical degree. *Id.* Dkt. 2 at 1.

Stony Brook opposed that motion, arguing in part:

> Plaintiff seeks a preliminary injunction requiring [Stony Brook] to violate its own policies and dilute its standards by allowing Plaintiff—who has not completed his medical degree within the seven-year maximum time allotment applicable to all

> students, despite being provided accommodations—to remain enrolled as a student indefinitely while he belatedly pursues litigation against [NBME]....

*Id.* Dkt. 13 at 12-13.

By minute order dated August 4, 2022, any action by Stony Brook on Sampson's status in medical school was stayed through October 14, 2022. On October 6, 2022, Stony Brook consented to voluntarily extending the stay through December 13, 2022. *Id.* Dkt. 17.

## II. Sampson's Lawsuit Against NBME

Sampson filed his complaint against NBME on August 29, 2022—more than five years after NBME first denied his request for testing accommodations on the USMLE. *See Sampson v. NBME*, No. 22-5120 (E.D.N.Y.) Dkt. 21 ¶ 11 and Exs. 1 and 3. Sampson also sought a preliminary injunction against NBME, arguing that in the absence of mandatory preliminary injunctive relief providing him his requested testing accommodations, he would "be dismissed from medical school and his medical career will be over." *Id.* Dkt. 16 at 1. Following expedited briefing and an expedited three-day evidentiary hearing, the Court issued a Memorandum Opinion and Order granting Mr. Sampson's preliminary injunction motion. *Id.* Dkt. 46.

## III. NBME's Appeal

NBME appealed the Court's preliminary injunction order. The Second Circuit granted NBME's motion to expedite the appeal over Sampson's objection. *Sampson v. NBME*, No. 23-3 (2d Cir.), Dkt. 29. Following briefing and oral argument, the Second Circuit issued a Summary Order on May 1, 2023, vacating the Court's order granting Sampson's motion for a preliminary injunction. *Id.* Dkt. 50. Given Sampson's status in medical school and his unresolved litigation against Stony Brook, the Second Circuit found that Sampson had not made a strong showing of irreparable harm and that the Court should not have issued a mandatory preliminary injunction against NBME. *Id.* at 3-5. The Second Circuit further stated, "[w]e have considered all of

Sampson's remaining arguments and find them to be without merit," and that, on remand, the Court could "reevaluate the motion for preliminary injunction against NBME in light of Sampson's potential termination from medical school by Stony Brook" and other possible "developments in the Stony Brook case." *Id.* at 5.

**IV. Events After the Appeal**

The day after the Second Circuit's ruling, Sampson sought a status conference with the Court in this case, explaining that he was scheduled to take the Step 1 exam the week of May 15, 2023, and wanted to "address the time-sensitive issues with respect to accommodations." *Sampson v. NBME*, No. 22-5120 (E.D.N.Y.), Dkt. 51.

Before the status conference, NBME Disability Services informed Sampson that "notwithstanding the Order entered by the U.S. Court of Appeals vacating the mandatory preliminary injunction that had been issued on December 2, 2022," he would receive his requested accommodations on the Step 1 exam on his upcoming testing dates and would receive the same accommodations if and when he takes the Step 1 and Step 2 Clinical Knowledge exams. *Id.* Dkt. 52 at 3-4. NBME informed Sampson of this decision by letter dated May 3, 2023, *id.*, and informed the Court of the decision that same day, *id.* at 1.

The Court proceeded with the May 4, 2023 status conference requested by Sampson and allowed counsel for Sampson to be heard at that time. *See* Mem. in Supp. of Sampson's Req. for Reasonable Attorneys' Fees and Costs ("Pl. Br.") Ex. D at 2:16-21. Counsel for Sampson asserted that NBME could "retract" the accommodations letter it issued on May 3. *Id.* at 3:11-19. The Court expressed skepticism that NBME would do this, *id.* 3:22-23, and, following reiteration by NBME's counsel that the letter was an unequivocal commitment to Sampson that he would receive his requested testing accommodations, *id.* 4:10-19, asked "why don't we just let Mr. Sampson study for step one and move on?", *id.* 4:21-22. The Court declined Sampson's invita-

tion to issue any type of court-ordered relief to Sampson with respect to the accommodations that NBME voluntarily agreed to provide. *Id.* 5:1-17.

Sampson's complaint against NBME remains pending and the case is at a preliminary stage. There has been no discovery and there has been no final judgment in the case on any of Sampson's claims.

**ARGUMENT**

Under the Americans with Disabilities Act, a court "may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses...." 42 U.S.C. § 12205. An award of fees thus requires a finding that the party seeking fees was the "prevailing party," and even in that instance an award of fees is discretionary.

A "prevailing party" does not include "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 600 (2001) (rejecting so-called "catalyst theory" for awarding fees). Instead, a plaintiff must '"receive at least some relief on the merits of his claim before he can be said to prevail.'" *Id.* at 603 (citation omitted); *see also Roberson v. Giuliani*, 346 F.3d 75, 79–80 (2d Cir. 2003) (plaintiffs are eligible for attorneys' fees only if they "achieve some material alteration of the legal relationship" between the parties that is "judicially sanctioned"). For example, a "private settlement agreement" would not "convey the necessary judicial imprimatur or sanction." *Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.*, 356 F.3d 444, 451 (2d Cir. 2004) (citing *Buckhannon*, 532 U.S. at 604–05 & n.7); *see also Torres v. Walker*, 356 F.3d 238, 244–45 (2d Cir. 2004) ("we conclude that the 'so-ordered' stipulation of dismissal in this case does not carry with it a suffi-

cient judicial imprimatur to warrant treatment as a monetary judgment"). The Supreme Court has further clarified that "[p]revailing party status … does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole v. Wyner*, 551 U.S. 74, 83 (2007).

## I. Sampson Is Not a Prevailing Party and Is Not Entitled to a Fee Award

Sampson is not a prevailing party in this litigation and is not entitled to an award of attorneys' fees or costs. Sampson initially was awarded a preliminary injunction, but that order was vacated by the Second Circuit based on his failure to show irreparable harm. Because of that ruling, Sampson "is not, and cannot be considered ever properly to have been, a 'prevailing party.'" *Ace Partners, LLC v. Town of E. Hertford*, 883 F.3d 190, 203 (2d Cir. 2018) (reversing district court award of attorneys' fees due to reversal of district court judgment) (citations omitted); *see also Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 81 (2d Cir. 2001) ("[G]iven our reversal of the district court's rulings in favor of plaintiffs on their First Amendment claims, the district court's award of attorneys' fees to them as 'prevailing part[ies]' … must also be reversed.") (citation omitted).

Although Sampson repeatedly describes the Second Circuit's ruling as made on "technical grounds," Pl. Br. at 1, 2, 7, the Second Circuit vacated the preliminary injunction order because Sampson failed to demonstrate irreparable harm, "the single most important prerequisite for the issuance of a preliminary injunction," *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Sampson also attempts to turn his defeat into victory by describing the Second Circuit ruling as "authoriz[ing] this Court to reissue the injunction with more details about the companion case against Stony Brook," Pl. Br. at 7, but that reads too much into the Second Circuit's passing comments on this point. The Second Circuit simply said that "[o]n remand, the district court may *reevaluate* the motion for preliminary injunction against NBME in

light of Sampson's potential termination from medical school by Stony Brook" and could also "consider developments in the Stony Brook case." Summary Order at 5 (emphasis added). Nothing in the Second Circuit's ruling suggested that this Court should reissue the preliminary injunction on remand or indicated how the Second Circuit would rule if a preliminary injunction were reissued on remand. *See Soc'y for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1253, 1254 (2d Cir. 1984) ("Because we vacated the entire [district court] order …, plaintiffs have not yet prevailed on the merits in any way. … While our earlier opinion may make it seem likely that plaintiffs will be entitled to some relief, it is impossible to be certain how much—if any—will eventually be granted."). Sampson cannot avoid the fact that the Second Circuit vacated the preliminary injunction, precluding his application for a fee award on the basis of that preliminary injunction.

Indeed, Sampson's primary argument appears to be that he is a "prevailing party" because, after the Second Circuit vacated the Court's preliminary injunction order, NBME voluntarily agreed to provide him with his requested accommodations. Pl. Br. at 6-7. He is wrong. NBME's voluntary decision to provide accommodations was not a "judicially sanctioned change in the legal relationship of the parties," *Roberson v. Giuliani*, 346 F.3d at 81, and thus did not bestow prevailing party status on Sampson. "[A] plaintiff is not a 'prevailing party' if he or she 'achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.'" *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102-103 (2d Cir. 2009) (quoting *Buckhannon*, 532 U.S. at 601); *see also Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008) ("In this case, Defendants voluntarily gave Ma the relief he sought. Indeed, after the Defendants' actions, the district court dismissed Ma's complaint as moot and entered no order on his behalf.

Thus, Ma clearly does not fit the definition of a 'prevailing party' as set out in *Buckhannon* and is therefore ineligible for an award of attorneys' fees and costs ….").

NBME made the decision to provide Sampson with his requested accommodations in a letter sent to Sampson without any Court involvement. *See* Dkt. 52 at 3-4. Although NBME repeated this commitment on the record in a status conference before the Court (a status conference convened at the request of Sampson), there was no need for a Court order given the voluntary commitment made by NBME:

Vargas: Last night, the NBME claims to have reversed course, in a transparent effort to evade an order of this Court. And just as he always was, Mr. Sampson is at their mercy. At any point, they can retract the accommodations letter issued last night, changing course on a dime....

Court: … I can't imagine that the Board would do that but why don't we just — why don't you just stipulate to it? … I mean, are you really concerned about that?

Vargas: Yes, we are, your Honor. The NBME's letter issued last night itself on page two specifies that Mr. Sampson must reapply for accommodations each time he takes a step of the USMLE. So we do request and Mr. Sampson does need an order of protection, and Rule 65 permits a preliminary injunction motion to be transformed into a permanent injunction, and that is what he seeks.

Mew: Your Honor, this is [Caroline] Mew for the National Board of Medical Examiners. To clarify the statement in the letter about requesting accommodations, it's simply for him to confirm that he wants the accommodations on a later test. NBME has unequivocally committed in that letter to providing him accommodations not only on his upcoming tests but to subsequent administrations of step 2CK and step three of the USMLE, and I repeat that unequivocal commitment right now. The accommodations will be provided.

Court: Yeah, I understand that.

Okay, so why don't we just let Mr. Sampson study for step one and move on? I mean, I don't have any reason to believe that the Board is not going to stand by what Ms. Mew just said, so what's the relief you're seeking today, Ms. Vargas?

Vargas: Today, we seek an order to give Mr. Sampson certainty that the position of the NBME will not change, that he will not be denied accommodations when he seeks them.

> Court: Ms. Mew just committed on the record that's the case. She committed on the record that's the case, so there's no reason to do anything other than for Mr. Sampson to put his head down and keep studying and take step one and move on from there. If you want to put something in writing about why you think you need more, be my guest. But I don't think you need more and I think the Board has stepped up and put on the record in a recorded conference to a federal judge what they believe — what they see their obligations are, and I don't see any reason to doubt them. So if you want to put something in writing, you can, but I don't think you need to.

Pl. Ex. D Hearing Tr. at 3:14-5:17. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve in the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon Bd. & Care Home*, 532 U.S. at 605; *see also Lamberty v. Conn. State Police Union*, No. 21-1275, 2022 WL 319841, at *3 (2d Cir. Feb. 3, 2022) (identifying court proceedings that have been held to have conveyed sufficient "judicial imprimatur" in the Second Circuit, involving consent decrees, orders retaining jurisdiction over enforcement of settlement agreements, and orders expressly incorporating settlement terms (citations omitted)).

This case is readily distinguishable from the "judicial imprimatur" cases cited by Sampson, where plaintiffs were found to be prevailing parties. *See* Pl. Br. at 6. In *Roberson v. Giuliani*, the parties entered into a settlement agreement and the district court entered an order explicitly retaining jurisdiction over the settlement agreement for enforcement purposes. 346 F.3d at 78, 83. That is not what happened here. This case is also not like *Preservation Coalition of Erie Cty. v. Fed'l Transit Admin.*, 356 F.3d 444, 448-49, 452 (2d Cir. 2004), where the defendant's actions were in response to a district court order requiring the defendant to act quickly, otherwise the court would "not hesitate to invoke its inherent equitable authority to assure that it

is done." *See* 129 F. Supp. 2d 551, 577 (W.D.N.Y. 2000). Here, NBME provided the accommodations of its own volition.[1]

For similar reasons, this is not a case like *Perez v. Westchester Cty. Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009). In *Perez*, the district court judge "advised the parties on how they should expect the law to come out, … suggested appropriate settlement terms, and … directed counsel to conduct settlement negotiations and to bring settlement offers back to their respective parties." 587 F.3d at 152. Nothing like that happened in this case. Nor are the facts similar to those in *Kirk v. N.Y. St. Dep't of Educ.*, 644 F.3d 134 (2d Cir. 2011). In *Kirk*, the plaintiff obtained summary judgment in his challenge to a New York law that allowed only United States citizens and lawful permanent residents to obtain professional veterinarian licenses. The plaintiff was granted legal resident status while the case was on appeal, and the Second Circuit dismissed the appeal as moot and vacated the judgment. In finding that the plaintiff was nevertheless a prevailing party, the court noted: (1) the plaintiff had obtained a judgment on a fully developed record, not on a preliminary injunction motion; (2) no court overturned the plaintiff's favorable judgment on the merits; and (3) the defendant had provided the plaintiff with a license in accordance with the district court's summary judgment ruling and that license could not be revoked due to other provisions of New York law, and thus "he was able to keep the license he obtained as a consequence of the judgment." *Id.* at 138-39 (2d Cir. 2011) (distinguishing *Sole v. Wyner, supra*). None of these factors are found in Sampson's case. Sampson's initial victory was on a preliminary, pre-discovery record, the preliminary injunction order was vacated on its merits based upon application of the standard preliminary injunction factors and a finding by the appellate

[1] Sampson points to the Court's statement in the separate *Stony Brook* case indicating that it intended to issue a new preliminary injunction order after the Stony Brook situation was clarified, but NBME is not a party to that proceeding and was not ordered by the Court to do anything in this case.

court that irreparable harm had not been shown, and Sampson received accommodations on the Step 1 examination because NBME voluntarily decided to provide the accommodations without involvement of the Court.

Sampson's policy arguments, *see* Pl. Br. at 8, cannot change the fact that he is not a prevailing party and therefore is not entitled to a fee award. His arguments also ignore the specific circumstances of this case. Sampson's attorneys highlight their need to "devot[e] a substantial number of hours to this case in the compressed time frame necessary to ensure that Sampson could take—and pass—Step 1 before it was too late." Pl. Br. at 5. But it was Sampson's litigation counsel who made strategic decisions about not filing suit against NBME several years ago, either when NBME initially denied his accommodation request or denied one or more of his requests for reconsideration,[2] then suing his medical school first and seeking a preliminary injunction in that case before filing a separate, later lawsuit against NBME[3]—thereby forcing expedited proceedings in this case that necessitated the involvement of multiple attorneys on both sides of the dispute and escalated the cost of this litigation, not only for Sampson, but also for NBME, whose accommodation review process is intended to protect the fairness of the examination process for all examinees (by providing extra testing time only when it has been shown to be war-

[2] NBME first denied Sampson's accommodation request in June 2017, and Sampson was represented by counsel as early as 2018. (McGeehan Decl. Ex. 3; McGeehan Decl. ¶ 24)

[3] Sampson argues that he was "forced" to file this lawsuit in August 2022 and seek a preliminary injunction at that time because NBME did not timely respond to his pre-suit settlement communications. *See* Pl. Br. at 1. But, according to his fee request, Sampson was preparing for this litigation as early as January 14, 2022, *see* Pl. Br. Ex. C.2, and yet he did not send his "pre-suit settlement communication" until more than six months later, on July 18, 2022. When Sampson's counsel reached out to counsel for NBME on July 18, identifying Sampson's dispute and threatening to sue, Pl. Br. Ex. A Ex. 2, counsel for NBME responded in a matter of days and explained he was out of the country, *see id.* Ex. 3. Sampson's counsel did not express any sense of urgency in response to this message, *see id.*, and substantive but unsuccessful discussions regarding a possible settlement in fact occurred on September 20 and 21, 2022, shortly after suit was filed.

ranted) and the integrity of exam results (which jurisdictions rely upon as part of their physician licensure process). *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88-89 (2d Cir. 2004). NBME's decision to voluntarily provide accommodations to Sampson to avoid further disruption and expense of litigation simply shows that both parties faced financial pressure in this lawsuit.[4]

Finally, Sampson ignores the fact that there has been no final judgment in this action and no decision on the merits. His ADA claim that is the basis of his attorneys' fee request, *see* Pl. Br. at 4, is still pending (although moot), as is his Section 504 claim. He does not say in his fee papers that he intends to dismiss his complaint, nor does he otherwise address the pendency of his claims.

Sampson received his desired accommodations, but he is not a prevailing party under Supreme Court and Second Circuit precedent. He is not entitled to an award of fees and costs.

## II. Sampson Cannot Recover Fees or Costs for Work on Appeal

Even if Sampson was a prevailing party on his ADA claim in this lawsuit (and he is not), he could not recover fees or costs for work performed on NBME's appeal to the Second Circuit because it was NBME, not Sampson, who prevailed on this appeal. "The degree of a party's success on appeal … impacts the fees that the party may recover for that appeal." *Sooroojballie v. Port Auth. of N.Y. & N.J.*, No. 15-1230, 2020 WL 9934418, at *13 (E.D.N.Y. Nov. 20, 2020), *report & recommended decision adopted*, 2021 WL 1827116 (E.D.N.Y. May 7, 2021) (reducing fees by 10% based upon lack of success on appeal). Plaintiff cites out-of-circuit cases where the

[4] Sampson has submitted a declaration in support of his fee request from Robert Dwyer, an attorney who was not involved in the litigation, expressing his opinion that NBME's voluntary provision of accommodations "demonstrates" that "Plaintiff's claims were 100% meritorious." Decl. of Robert J. Dwyer, ¶ 10.a (Pl. Br. Ex. G). NBME respectfully disagrees with this opinion, which is surprising coming from an attorney who has practiced for many years and surely realizes that any number of reasons might prompt a party to end a dispute even though an opposing party's claims might not succeed if fully litigated. Mr. Dwyer expressed additional opinions with which NBME also disagrees, including his opinion that "Plaintiff was the prevailing party" (a legal issue that is for the Court to decide).

party seeking fees ultimately prevailed on the merits of the case despite an interim lack of success on an appeal. *See* Pl. Br. at 17 (citing *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991); *J.P. v. County School Board*, 641 F. Supp. 2d 499 (E.D. Va. 2009)). That is not the procedural history of this case. And in *Ustrak v. Fairman*, 851 F.2d 983, 986 (7th Cir. 1988), which Sampson also cites, Pl. Br. at 18, the issue was whether the plaintiffs should recover fees where they were partially successful on appeal. Here, Sampson had no success on appeal.

The following hours spent on appellate work for Sampson should be excluded from any fee award if Sampson is nevertheless found to be a prevailing party:

Charles Weiner – 54.7 hours between 1/11/2023-5/1/2023 ($24,615) (*see* Pl. Br, Ex. A.1)

Mary Vargas – 46.9 hours between 1/11/2023-5/1/2023 ($21,105) (*see* Pl. Br., Ex. C.2)

Michael Stein – 56.3 hours between 1/11/2023-5/1/2023 ($23,927.50) (*see* Pl. Br., Ex. I.2)

At the requested rates of $450 per hour for Mr. Weiner and Ms. Vargas and $425 per hour for Mr. Stein, this would result in a $69,647.50 reduction to Plaintiff's requested fees.

For the same reasons, Sampson is not entitled to recover his claimed costs on appeal of $864.98. *See* Pl. Br. at 20.

## III. Sampson's Claimed Expert Witness Expenses Are Not Recoverable

If Sampson is found to be a prevailing party, his request to recover $13,700 in "expert witness fees" for Jeannette Wasserstein, Ph.D., should not be allowed. *See* Pl. Br. Ex. C-4 and C-7. The bulk of these fees—$8,500—were incurred when Sampson obtained an evaluation back in 2020. The other claimed fees are a $4,900 expert "retainer." Dr. Wasserstein testified as a treating professional, however, and she was never tendered as an expert witness by Sampson in the preliminary injunction hearing. These expenses are not properly treated as "expert witness fees" in this litigation. *Cf. Picinich v. UPS*, No. 5:01-CV-01868 (NPM), 2008 WL 1766746, at *5 (N.D.N.Y. 2008) (excluding fees of treating physician from reimbursement).

Sampson also has provided no description of the 12.25 hours of work that Dr. Wasserstein claims to have conducted for the $4,900 retainer listed on her invoice. *See* Pl. Br. Ex. C-7. This lack of specificity warrants a significant reduction in the amount claimed, if any of her fees are allowed at all. *See Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 218 (E.D.N.Y. 2019).

## CONCLUSION

Sampson's request for attorneys' fees and costs should be denied. In the alternative, if Sampson is determined to be a prevailing party, any award of fees and costs should be reduced as set forth above.

Dated: July 24, 2023

Respectfully submitted,

*/s/ Caroline M. Mew*

Caroline M. Mew (*pro hac vice*)
Perkins Coie LLP
700 13th St. NW, Suite 800
Washington, DC 20005
Telephone: +1.202.654.1767
Facsimile: +1.202.654.6211
CMew@perkinscoie.com

Adam R. Mandelsberg, Bar No. 065532013
Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.261.6867
Facsimile: +1.212.399.8067
AMandelsberg@perkinscoie.com

Counsel for NBME

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on Plaintiff on July 24, 2023, via electronic mail to Plaintiff's counsel, consistent with the Court's bundling instructions and agreement of counsel, addressed as follows:

Charles Weiner
charles@charlesweinerlaw.com

Mary Vargas
mary.vargas@steinvargas.com

Michael Stein
michael.stein@steinvargas.com

*/s/ Caroline M. Mew*
Caroline M. Mew