**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ROBERT SAMPSON, | : | |
| | : | |
| | : | CIVIL ACTION NO. 2:22-cv-05120-JMA |
| v. | : | |
| | : | |
| NATIONAL BOARD OF MEDICAL | : | |
| EXAMINERS, | : | |
| | : | |

**REPLY BRIEF IN SUPPORT OF SAMPSON'S FEE PETITION**

NBME does not deny that it was on notice that this Court was about to re-issue a preliminary injunction requiring NBME to provide Sampson with testing accommodations. Resolution of Sampson's status as an enrolled student had, per the Second Circuit's order, been the essential precondition to re-issuing the preliminary injunction against NBME.  On May 3, 2023, in the *Stony Brook* case, this Court entered an order stating that Sampson has until August 2024 to graduate.  With the condition for the reissuance of a preliminary injunction now met, and the Court stating on the record its intent to re-issue the injunction, NBME relented that very same day.

This was not some voluntary change of heart on NBME's part, but rather NBME confronting reality.  It had contested Sampson's claims in preliminary injunction briefing and at a hearing and lost.  It had tried to secure reversal on appeal, only to have the Second Circuit state that this Court could consider developments in the *Stony Brook* case in determining whether to re-issue the preliminary injunction.  NBME's about-face came only after years of denying Sampson's requests for accommodations and after having vigorously litigated every aspect of Sampson's claims in litigation.

NBME does not address in its fee opposition this turn of events except to assert in a footnote buried on page nine of its brief that this Court's stated intent to re-issue the preliminary injunction was in a "different case" to which NBME was not a party. The two cases are inextricably intertwined, however, with the Second Circuit's ruling that the NBME case turned on developments in the *Stony Brook* case. *Sampson v. Nat'l Bd. of Med. Exam'rs*, Case No. 23-3, slip op. at 4-5 (2d Cir. May 1, 2023). NBME had also filed a notice with the Second Circuit disputing this Court's characterization of developments in the *Stony Brook* case, demonstrating awareness of how the *Stony Brook* case affected the *NBME* case. *Sampson v. Nat'l Bd. of Med. Exam'rs*, Case No. 23-3, Dkt. No. 111 (2d Cir. Apr. 21, 2023).

This is a case where if NBME had held out any longer, there would have been a second injunction entered against it. NBME's strategy of waiting until the last minute to relent in an attempt to avoid paying fees and costs, if permitted, would leave Sampson deeply in the hole, with significant legal fees and costs going unreimbursed. NBME should be required to pay the reasonable legal fees and costs that it forced Sampson to incur to obtain the accommodations that this Court held he needed, and which it provided Sampson only as a result of this Court's substantial involvement.[1]

## I.   Sampson Is a Prevailing Party

This is a case where Sampson achieved all of the necessary testing accommodations that he sought in this case despite NBME's best efforts to deprive him of these accommodations.

---

[1] Having obtained as a result of this litigation the accommodations that he needed to demonstrate his knowledge of medicine on the Step examinations, Sampson seeks no other remedies beyond reasonable attorneys' fees and costs. In the interests of finality, Sampson does not seek damages or any other relief beyond that already obtained, and the only remaining issue is the fee petition.

NBME does not dispute that this case resulted in a material alteration in the legal relationship between the parties. NBME is not free to return to its previous denial of its obligations in refusing to provide Sampson with necessary testing accommodations. NBME also does not dispute that the material alteration in legal relationship between the parties was sanctioned by this Court when the Court asked NBME to state on the record that it would provide these accommodations to Sampson. If NBME's conduct were truly voluntary, as it claims, it would have been free to reverse that decision at any time as it chose. NBME is not free to so reverse itself because, NBME made a binding promise to this Court on the record to provide the testing accommodations.

As described *supra*, NBME's assertion that it provided the accommodations of its own volition is belied by the record. NBME had rejected seven times Sampson's requests for accommodations prior to his bringing the lawsuit, and vigorously contested his claims over the course of preliminary injunction briefing, a three-day evidentiary hearing, and an appeal. NBME does not deny that it relented mere hours after this Court stated its intent on the record to re-issue the preliminary injunction and had entered an order stating that Sampson has until August 2024 to graduate. The timing of NBME's surrender shows that it was not a voluntary change of heart, but a recognition that it would not be able to stop Sampson from taking the Step 1 examination in two weeks with testing accommodations.

NBME therefore errs in relying on cases in which an appellate court's reversal left the plaintiffs with nothing to show for their litigation efforts. *See Sole v. Wyner*, 551 U.S. 74, 86 (2007) (final judgment entered against plaintiff on the merits); *ACE Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 204 (2d Cir. 2018) (reversing and directing that judgment be entered in favor of defendants); *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 82 (2d Cir. 2001) (finding

no merit to plaintiffs' claims).  In contrast, in Sampson's case, the Second Circuit remanded the case so this Court could consider developments in the *Stony Brook* case, and the subsequent order in the *Stony Brook* case resolving Sampson's student status had cleared the way for this Court to re-issue the preliminary injunction against NBME.

NBME similarly misplaces reliance on the nearly forty-year-old case of *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1253 (2d Cir. 1984).  In that case, the Second Circuit held that granting class certification alone was not enough to establish a basis for fees. *Id.* at 1254.  That case is inapposite because it was "impossible to be certain" how much relief the plaintiffs would eventually obtain on the merits.  *Id.*  In this case, by contrast, this Court stated that it would re-issue the preliminary injunction once Sampson's status as a medical student was resolved, and NBME relented in order to avoid having the injunction re-issued against it.[2]

---

[2] Since NBME acted in response to this Court's imminent action, NBME's actions were not voluntary and its cases discussing the doctrine of voluntary cessation are not on point.  In *Ma v. Chertoff*, 547 F.3d 342 (2d Cir. 2008), the plaintiff filed suit seeking a green card, which the defendant granted shortly thereafter.  The court played no role in the case other than confirming that the green card had issued and then dismissing the case as moot.  *Id.* at 343.  There was no threat of a preliminary injunction or other court order that compelled the defendant to grant the green card.  Similarly, in *Lamberty v. Conn. State Police Union*, No. 21-1275, 2022 WL 319841 (2d Cir. Feb. 3, 2022), there was no judicial imprimatur because the parties' settlement was not a judicially sanctioned change in the parties' relationship.  *Id.* at *4.

NBME also cited *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97 (2d Cir. 2009), in which the district court took so long to rule on a motion for preliminary injunction that the student plaintiffs had graduated in the interim.  *Id.* at 101-02.  The court had then tried to retroactively issue a preliminary injunction as part of a fee petition, when doing so was procedurally improper because the defendant did not have adequate notice.  *Id.* at 103-06.  In this case, by contrast, NBME had ample notice of Sampson's motion for preliminary injunction and vigorously opposed it, relenting only when the injunction was going to be re-issued on remand.

This Court also should reject NBME's attempt to relitigate the facts of this case.[3]  This Court's actions—first issuing a preliminary injunction and then making clear on remand that it would re-issue the injunction and then extracting a binding promise from NBME on the record that it would provide the requested accommodations—were judicial imprimatur that compelled NBME to provide Sampson with the requested testing accommodations that it had previously refused to provide.  But for this Court's actions, NBME would not have provided Sampson with the accommodations that he needed on the Step examinations.

## II.     The Lodestar Is Reasonable and Sampson's Attorneys Should Be Compensated for All Work Necessary To Achieve the Outcome in this Case

NBME does not challenge the requested hourly rates for Sampson's attorneys.  NBME also does not challenge any of the attorneys' time as duplicative, inefficient, or otherwise not well-spent in pursuit of the outcome in this case.

NBME's only challenge to the lodestar is with respect to fees requested for work on appeal.  NBME does not, however, dispute that Sampson *had* to defend against the appeal or else default.  *E.g.*, *J.P. v. County Sch. Bd.*, 641 F. Supp. 2d 499, 511 (E.D. Va. 2009) ("If the Plaintiffs had not defended against the appeal, the victory they secured in the district court would have been lost by default.").

The work that Sampson's counsel did on appeal was necessary to maintain the groundwork for the preliminary injunction to re-issue.  The Second Circuit's focus on irreparable harm indicates that it did not find compelling NBME's arguments going to the other

---

[3] NBME again argues that this case should have been brought earlier.  NBME Br. at 10. As this Court held, however, this did not counsel against irreparable harm, Dkt. No. 46 at 23, and the Second Circuit did not give any weight to this argument as evidenced by the fact that on remand, it focused only on the need for this Court to consider developments in the *Stony Brook* case.  *Sampson*, Case No. 23-3, slip op. at 4-5.

prerequisites for preliminary injunction with respect to likelihood of success on the merits, the balance of hardships, and the public interest.  Vacatur on such grounds would have precluded reissuance of the preliminary injunction on remand, obviating the need for this Court to consider developments in the *Stony Brook* case going only to irreparable harm.  Those portions of the preliminary injunction ruling remained undisturbed, leaving only the status of the *Stony Brook* case as an issue for this Court to resolve post-remand.[4]  When this Court signed the order on the stipulation in the *Stony Brook* case, the path was clear for the injunction to re-issue, which this Court had stated its intent to do, and it was at that point that NBME surrendered the fight.

NBME cites only one case for the proposition that Sampson should not receive reasonable appellate fees.  In *Sooroojballie v. Port Auth. of N.Y. & N.J.*, the plaintiff had secured a jury award of $2,160,000 that the Second Circuit then reduced to $250,000.  On remand, a magistrate recommended a 10% reduction in fees to reflect that the plaintiff's damages had been reduced by 88% on appeal, and the district court adopted this recommendation.  No. 1:15-cv-01230(WFK)(PK), 2020 WL 9934418, at *14 (E.D.N.Y. Nov. 10, 2020) (Kuo, M.J.), *adopted*, 2021 WL 1827116, at *4 (E.D.N.Y. May 7, 2021) (Kuntz, J.).  This case differs significantly in that once the injunction was re-issued against NBME, Sampson would have preserved in full the preliminary injunction obtained in this case, a far cry from the 88% reduction in damages that the plaintiff suffered in the *Sooroojballie* case.  Moreover, even in *Sooroojballie*, the court reduced fees by only 10% on remand given the remittitur.  There is nothing in this case that supports wiping out in their entirety the appellate fees that Sampson necessarily incurred in defending the

---

[4] Although the Second Circuit stated at the end of its opinion that it had considered all of Sampson's "remaining arguments" and found them to be without merit, this was limited to the issue of irreparable harm, as the Second Circuit did not address any of the other factors and remanded only for reconsideration of the irreparable harm issue.  *Sampson*, Case No. 23-3, slip op. at 3-5 (discussing only irreparable harm).

appeal and paving the way for the preliminary injunction to re-issue.  Moreover, NBME has not disputed the reasonableness or necessity of any of the work done on appeal.

The work that Sampson did on appeal was necessary to preserve the record and set the stage for the injunction to re-issue on remand.  For these reasons, Sampson should be reimbursed his attorneys' fees and costs incurred defending against the appeal, a defense that was necessary to secure the testing accommodations obtained in this case.

### III.    Wasserstein's Expert Fees Were Necessary and Should Be Reimbursed

The only costs (other than appellate costs) that NBME challenges are Wasserstein's expert fees.  NBME did not challenge any other costs which should be awarded as unopposed.

NBME does not contest that the ADA provides for reimbursement of reasonable litigation expenses.  42 U.S.C. § 12205.  For the proposition that this Court nonetheless should not award costs associated with Wasserstein's evaluation, report, and testimony, NBME cited the case *Picinich v. UPS*, No. 5:01-CV-01868 (NPM), 2008 WL 1766746, at *5 (N.D.N.Y. Apr. 14, 2008).  In *Picinich*, the court sustained the defendant's objection to an expert and excluded his report from evidence.  The proffered expert had nonetheless still testified to a significant portion of the material that had been in the report, and the court awarded expert costs.  *Id.* at *4.

In this case, NBME did not challenge Wasserstein's qualifications to testify, did not contest the admissibility of her report, and she testified extensively to her opinions based on her evaluation of Sampson.  There was no dispute with respect to Wasserstein's qualifications and this case turned in large part on a "battle of experts" between Wasserstein and NBME's five proffered experts.  This Court relied extensively on Wasserstein's report and testimony, referencing her by name several dozens of times in its opinion following the hearing.  NBME

itself offered evidence from five paid consultants such that it can hardly object to Sampson's economical reliance on only one expert.

NBME also erroneously describes Wasserstein's fees as an undifferentiated sum. NBME's cited case, *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 218-19 (E.D.N.Y. 2019), concerned the lack of documentation to support the request for fees. Sampson, in contrast, provided documentation for all requested costs. *See* Ex. C to Fee Petition, Decl. of Mary Vargas, at ¶ 31 & Ex. 6 (itemizing Wasserstein's costs). Wasserstein's billing records are clearly itemized:

- Wasserstein billed $8,800 for the comprehensive evaluation and reporting of the results. *Id.*

- Wasserstein billed $4,900 for her time preparing for and testifying at the preliminary injunction hearing. *Id.*

Wasserstein's evaluation and subsequent testimony at the hearing were critical to Sampson's success at the preliminary injunction hearing, with this Court repeatedly referencing Wasserstein's evaluation and testimony in its order granting the preliminary injunction that was about to be re-issued. Given the importance of Wasserstein's report and testimony in this case, her expert fees were a reasonable and necessary cost that should be reimbursed.

## IV. Sampson Incurred Additional Fees in Opposing NBME's Opposition to Fee Petition

Sampson incurred additional legal fees in responding to NBME's opposing to the fee petition. Courts have awarded such fees as part of a fee award. *See, e.g.*, *Lilly v. City of New York*, 934 F.3d 222, 235 & n.70 (2d Cir. 2019); *Garcia v. SBKU Servs.*, 17-CV-03130(JMA)(ARL), 2021 WL 1186321, at *2 (E.D.N.Y. Mar. 30, 2021) (Azrack, J.).

After exercising billing discretion, including waiving all time spent on the reply brief by Charles Weiner, Sampson seeks fees only for the time Michael Stein and Mary Vargas spent in preparing this brief.  Stein worked 10.4 hours at a requested rate of $425, and Mary Vargas worked 2.2 hours at a requested rate of $450.  *See* Ex. A, Decl. of Michael Stein; Ex. B, Decl. of Mary Vargas.  Applying the lodestar yields a total of $5,410.00 in reasonable attorneys' fees incurred in responding to NBME's opposition to the fee petition.

## V.      Conclusion

For the reasons stated in Sampson's fee petition and reply brief, this Court should award $252,637.50 in reasonable fees through the opening brief, $5,410.00 for work done on the reply brief, and $20,648.85 in reasonable costs.

Respectfully submitted,

*s/Mary C. Vargas*
Mary C. Vargas
Michael S. Stein
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel.:   (240)793-3185
mary.vargas@steinvargas.com
michael.stein@steinvargas.com

Charles Weiner
LAW OFFICES OF
  CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
Tel:    (267)685-6311
charles@charlesweinerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed via the Court's

CM/ECF system on September 18, 2023, on the following counsel of record for NBME:

Robert Burgoyne
RBurgoyne@perkinscoie.com

Caroline Mew
CMew@perkinscoie.com

Adam Mandelsberg
AMandelsberg@perkinscoie.com

*s/ Mary C. Vargas*
Mary C. Vargas
